THOMAS R. MCCONE & others [1] *vs.* NEW ENGLAND TELEPHONE
AND TELEGRAPH COMPANY.

Suffolk.   May 8, 1984. — November 7, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil,* Motion to dismiss. *Contract,* Employment. *Libel and Slander.*

A complaint alleging that an employer, by requiring its employee evaluations
to conform to a statistically determined distribution curve, caused the
plaintiffs to receive undeserved performance evaluations leading either
to their "constructive termination" or to unfavorable personnel actions,
with the result that they suffered the loss of salary increases and corres-
ponding pension benefits to which they were entitled, stated no claim
for relief on the theory that their employer was liable to them for breach
of the implied covenant of good faith and fair dealing in their employ-
ment-at-will contracts. [233-235]

An allegation by employees that certain evaluations of their work perform-
ance "were published to at least one superior" failed to state a claim of
defamation against their employer, where nothing was alleged to over-
come the employer's conditional privilege to disclose defamatory infor-
mation concerning an employee. [235-236]

CIVIL ACTION commenced in the Superior Court Department
on March 19, 1982.

The case was heard by *Thomas R. Morse, Jr.,* J., on a
motion to dismiss.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*John H. Cunha, Jr.* (*Jill Heine* with him) for the plaintiffs.
*William J. McDonald* (*John S. May* with him) for the defend-
ant.

---

[1] George Chapman, Paul C. Bowen, Joseph Monty, Thomas McFarland,
and John J. Hanlon.

LIACOS, J. The plaintiffs appeal from a judgment of a Superior Court judge allowing the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).[2] We transferred the appeal to this court on our own motion. The plaintiffs argue that the complaint should not have been dismissed because it alleged facts sufficient to support three claims: breach of the implied covenant of good faith and fair dealing in an employment-at-will contract; defamation; and deceit.[3] We affirm.

Under Mass. R. Civ. P. 12 (b) (6), the "accepted rule" is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). Moreover, "the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron, supra.*

Taking the plaintiffs' allegations as true, the following events occurred. The plaintiffs are six nonunion, management employees of the defendant, New England Telephone and Telegraph Company (company).[4] When the plaintiffs were employed, the

---

[2] According to the defendant's memorandum in support of its motion to dismiss, the complaint before us is the second complaint, the first complaint having been dismissed without prejudice. The judge dismissed the plaintiffs' second complaint "for the reasons stated in defendant's memorandum." The defendant's memorandum sought dismissal under Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974). However, the defendant's memorandum contains no arguments to support dismissal under Mass. R. Civ. P. 12 (b) (1) (lack of jurisdiction over the subject matter). Therefore, we consider the complaint dismissed solely under Mass. R. Civ. P. 12 (b) (6) (failure to state a claim upon which relief can be granted).

[3] The plaintiffs' complaint also included allegations of reckless infliction of emotional distress and unfair and deceptive acts or practices in the course of trade or commerce in violation of G. L. c. 93A, § 11. Since the plaintiffs did not raise these claims on appeal, we do not consider them. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[4] The plaintiffs' complaint states that at all times relevant to the complaint the plaintiffs were employees of the defendant company. However, the plaintiffs' brief states that five of the six plaintiffs are no longer employed by the defendant and that they were constructively terminated by the defendant's bad faith actions.

company promised to evaluate the plaintiffs' job performance and promotability solely on the basis of merit. At some point after the plaintiffs began their employment, the company instituted a policy requiring employee evaluations to conform to a statistically determined distribution curve (Bell Curve). Once the Bell Curve was instituted, the plaintiffs all received poor evaluations.[5] These poor evaluations did not reflect the merit of the plaintiffs' actual performances. Rather, the plaintiffs received low ratings to satisfy the demand of the Bell Curve that a predetermined percentage of employees receive low ratings. In sum, the plaintiffs claim that use of the Bell Curve resulted in "arbitrary, distorted, bad faith, and non-merit related" evaluations of the plaintiffs' job performances. Due to these poor evaluations, the plaintiffs were either denied promotions or unjustly demoted. All of the plaintiffs suffered the loss of salary increases and corresponding pension benefits which they would have received had they been evaluated in good faith. The plaintiffs also suffered damage to their professional reputations, disruption of their personal lives, and great pain of body and mind.

1. *Breach of the implied covenant of good faith and fair dealing.* The plaintiffs argue that they have alleged facts sufficient to make a claim that the company is liable to them for breach of the implied covenant of good faith and fair dealing in the employment-at-will contracts. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977).[6] We do not agree. Even if we assume that the company's use of the Bell Curve resulted in arbitrary, bad faith performance evaluations; that the company's bad faith actions led to the employees' constructive termination;[7] and, further, that constructive, rather than ac-

---

[5] The plaintiffs nowhere state that they received poor evaluations, but this is a necessary inference from their complaint.

[6] The plaintiffs nowhere state that their employment contract with the defendant was an "at-will" contract, but we infer that it was. There is no claim that the contract of employment was in writing or for a specified term. The plaintiffs assert principally the claim that their contract contained an implied covenant of good faith and fair dealing; this theory was developed specifically for "at-will" employment contracts. *Fortune, supra* at 100-105.

[7] The plaintiffs also argue that the company can be held liable for breach of the implied covenant even if it did not terminate the employees, either

tual, termination would suffice under the *Fortune* rule, the plaintiffs' allegations nonetheless fall short of stating a claim. Cf. *Kravetz* v. *Merchants Distribs., Inc.,* 387 Mass. 457, 462 (1982). The plaintiffs have alleged no damages which they would be entitled to recover under a theory of breach of an implied covenant of good faith and fair dealing.

They assert that the loss of salary increases and corresponding pension benefits constitutes a compensable loss.[8] In awarding damages for breach of the implied covenant of good faith and fair dealing, "[o]ur goal is and has been simply to deny to [the employer] any readily definable, financial windfall resulting from the denial to [the employee] of compensation for past services." *Gram* v. *Liberty Mut. Ins. Co.,* 391 Mass. 333, 335 (1984) (*Gram II*). Thus, in *Fortune* v. *National Cash Register Co., supra,* the plaintiff recovered commissions for sales he had already made; in *Gram* v. *Liberty Mut. Ins. Co.,* 384 Mass. 659 (1981) (*Gram I* ), and in *Gram II, supra,* the plaintiff was entitled to recover renewal commissions on policies he had already sold; and in *Maddaloni* v. *Western Mass. Bus Lines, Inc.,* 386 Mass. 877 (1982), the plaintiff recovered commissions due him for his past service to the defendant employer (helping to obtain interstate charter rights). In each of these cases the plaintiffs recovered commissions they had already earned.

The plaintiffs' argument seems to be that since the decision whether to promote them was based on an evaluation of their past performances, they had "earned" promotion (and its attendant increase in salary and pension benefits) by work performed

---

actually or constructively. The plaintiffs cite no cases to support this proposition, and we know of none in this State. Our cases have held employers liable for breach of the implied covenant of good faith and fair dealing only when they have terminated an employee. See, e.g., *Fortune, supra*; *Gram* v. *Liberty Mut. Ins. Co.,* 384 Mass. 659 (1981) (*Gram I*); and *Maddaloni* v. *Western Mass. Bus Lines, Inc.,* 386 Mass. 877 (1982).

[8] The plaintiffs also allege damage to their professional reputations, disruption of their personal lives, and great pain of body and mind. However, a suit for breach of an implied covenant of good faith and fair dealing is a suit on the contract, see *Fortune, supra* at 102; *Maddaloni, supra* at 883, and these additional damages are not contract damages.

in the past. This argument ignores the impact of our recent decision in *Gram II*. There we held that, while the employee could recover renewal commissions on past sales because they constituted an "identifiable, future benefit . . . reflective of past services," *Gram II, supra* at 334, quoting *Gram I, supra* at 673, he could not recover "career credits" because they constituted "future compensation for future services." *Gram II, supra* at 334. This was so even though the number of career credits the employee would have received was based on the length of his past service to the employer. Because the career credits were not specifically related to a particular past service, we held them not " 'reflective of past services.' " *Id.* at 334 & n.1. Thus, the plaintiffs' argument that they earned their salary increases and increased pension payments through past work performance simply does not survive our decision in *Gram II*.[9]

2. *Defamation.* The plaintiffs also argue that they alleged facts sufficient to state a claim of defamation. In their brief, they claim that the poor evaluations were defamatory and that these evaluations "were published to at least one superior." These allegations do not support a claim of defamation. "An employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 509 (1984). See *Sheehan* v. *Tobin*, 326 Mass. 185, 190-191 (1950), quoting W. Prosser, Torts § 94, at 837 (1941) (conditional privilege exists when publisher and recipient have a "common interest" and when "the communication is . . . reasonably calculated to protect or further it"). Here the plaintiffs allege that their immediate supervisors communicated the defamatory material to the department head, in accordance with the company's stated policy of conducting employee evaluations. Such communication clearly serves "the employer's legitimate inter-

---

[9] We note that the plaintiffs have not alleged that they were deprived of any *vested* pension rights. Instead, the plaintiffs allege in their brief merely that the company "retain[ed] the increased pension benefits which would have been due the plaintiffs had the evaluation been truly merit related."

est," *Bratt, supra,* and is conditionally privileged. An employer can lose a conditional privilege through "unnecessary, unreasonable or excessive publication" on proof that the defendant acted "recklessly." *Bratt, supra* at 515, 516. Even if we assume that the immediate supervisor communicated the plaintiffs' poor evaluations to someone other than the department head, the plaintiffs have alleged no facts at all to prove that such publication was made recklessly. Thus, the plaintiffs have failed to state a claim of defamation because they have alleged nothing to overcome the company's conditional privilege.

3. *Deceit.* Finally, the plaintiffs contend that their complaint set out an actionable claim of deceit. We decline to consider this point, however. On appeal the plaintiffs simply state, in a cursory and conclusory fashion, that their complaint below made out a claim of deceit. They cite no legal authority to support their claim. This is "an insufficient appellate argument." *Tobin* v. *Commissioner of Banks,* 377 Mass. 909, 909 (1979). Mass. R. A. P. 16 (a) (4). See, e.g., *Commonwealth* v. *Elder,* 389 Mass. 743, 747 n.9 (1983).

We conclude that the judge properly dismissed the plaintiffs' complaint for failure to state a claim under which relief can be granted.

*Judgment affirmed.*