USCA1 Opinion

 

 November 10, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1684 HAROLD F. PEARSON, III, Plaintiff, Appellee, v. JOHN HANCOCK MUTUAL LIFE INSURANCE CO., Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Robert P. Joy, with whom Benjamin Smith and Morgan, Brown & ______________ ______________ _______________ Joy were on brief, for appellant. ___ G. Rosalyn Johnson, with whom Harold Owen Beede and G. ___________________ ___________________ __ Rosalyn Johnson, P.C. were on brief, for appellee. _____________________ _________________________ _________________________ SELYA, Circuit Judge. This hard-fought appeal presents SELYA, Circuit Judge. _____________ one overarching question of Massachusetts law: could a reasonable jury, viewing the facts in the light most hospitable to the plaintiff, find that the defendant's personnel manual constituted a contract with its employees such that the defendant was bound to rehire the plaintiff, a former at-will employee, following the plaintiff's completion of a leave of absence? Because Massachusetts law requires a negative answer to this inquiry, we reverse the judgment below. Consequently, we need not reach the other issues briefed by the appellant. I. I. __ Background Background __________ From 1966 until 1987, plaintiff-appellee Harold F. Pearson, III, worked in the Agricultural Investments Department at John Hancock Mutual Life Insurance Company (Hancock). In late 1986, Pearson made arrangements to take an unpaid six-month leave of absence from the firm. At that time, and before, Hancock maintained a personnel manual for the guidance of administrators and employees. Pearson testified that Hancock held out this manual as authoritative regarding company rules and employee benefits. Pearson also said that, when he arranged for his leave of absence, the Hancock personnel assistant with whom he spoke referred to the manual while explaining the mechanics of the leave. Read most generously to plaintiff, certain language in the manual suggests that Hancock, subject to the discretion of the corporate hierarchs, would try assiduously to place an 2 employee seeking to return from a leave of absence in the job most nearly comparable to his last previous job. Pearson said that, before taking his leave, he told several Hancock officials that he expected to be rehired pursuant to the terms of the manual. Pearson has not argued that remarks made during these conversations including his initial conversation with the Hancock personnel assistant themselves constitute a contract.1 "Optimism," Voltaire wrote, "is a mania for maintaining that all is well when things are going badly." F.M.A. Voltaire, Candide (1759). So it was here. Approximately one month before _______ Pearson's leave was due to expire, he contacted Hancock about resuming his employment. After ordering an investigation to ascertain if appropriate positions were available, and concluding that none were open, one of Hancock's vice-presidents directed that a termination letter be sent to Pearson. He never returned. In July of 1989, Pearson brought suit in the United States District Court for the District of Massachusetts. He claimed that Hancock had violated his rights under the Employee Retirement Income Security Act of 1984 (ERISA), 29 U.S.C. ____________________ 1In the same vein, we note that, before Pearson departed, the parties signed a memorandum concerning his leave of absence. The memorandum states unequivocally that Pearson was "advised of the difficulties involved in offering an individual with a highly specialized job at [Pearson's] grade level a comparable position" following completion of a leave of absence. The memorandum also memorialized Pearson's understanding that he would "not be reinstated to [his] current position" and that his employment might possibly "be terminated at the expiration of the leave of absence." Not surprisingly, Pearson has not suggested that this memorandum constitutes a source of rights arising in his favor, and we do not consider either that possibility or theories alien to Pearson's basic breach of contract claim. See infra note 5. ___ _____ 3 1001-1461 (1988), and sought to recover severance pay allegedly due him. The ERISA count was tried to the bench. The judge found that the plaintiff was not eligible to receive severance benefits and exonerated Hancock of any ERISA violation. That ruling has not been appealed. In addition to the alleged ERISA violation, the complaint included several pendent state-law claims. The district court jettisoned the majority of the pendent claims.2 However, Pearson's breach of contract claim survived and went to the jury over the defendant's objection. Apparently believing that Hancock's search for a suitable opening was perfunctory, the jury awarded him damages of $345,000. The jury explicitly found, on special questions, that the personnel manual constituted a contract between the parties and that Hancock breached its contract by failing to rehire Pearson. When the district court denied Hancock's renewed motion for judgment as a matter of law, this appeal ensued. II. II. ___ Standard of Review Standard of Review __________________ In reviewing a district court's denial of a motion for judgment as a matter of law, we must examine the evidence and the inferences reasonably to be drawn from it in the light most flattering to the verdict-winner. See Veranda Beach Club Ltd. ___ ________________________ Partnership v. Western Surety Co., 936 F.2d 1364, 1383-84 (1st ___________ __________________ ____________________ 2Pearson has not appealed from the dismissal of these claims. 4 Cir. 1991); Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. _________ _____ 1987). This means that "[w]e take the facts as shown by the [winner's] evidence and by at least [as much] of the [loser's] uncontradicted and unimpeached evidence as, under all the circumstances, the jury virtually must have believed." Karelitz ________ v. Damson Oil Corp., 820 F.2d 529, 530 (1st Cir. 1987). If, _________________ without gauging witness credibility, resolving testimonial conflicts, or weighing the evidence, we ascertain that the proof, even when viewed through these rose-colored glasses, will not rationally support a finding of liability, then we must reverse the district court's refusal to enter judgment as a matter of law. See Hendricks & Assocs., Inc. v. Daewoo Corp., 923 F.2d ___ __________________________ ____________ 209, 214 (1st Cir. 1991); Wagenmann, 829 F.2d at 200. _________ III. III. ____ Analysis Analysis ________ The parties agree that Massachusetts law governs the breach-of-contract claim. Pearson argues that, applying Massachusetts law, the personnel manual formed the basis of an enforceable agreement between himself and Hancock and that, pursuant to the terms thereof, Hancock had an obligation to rehire him following his leave of absence. In contrast, the centerpiece of Hancock's appeal is the proposition that the personnel manual did not constitute a binding contract. On the facts of this case, we find Hancock's proposition to be compelling. A A 5 The cornerstone of our analysis is the decision of the the employer's personnel manual. In determining that no for Boston Community Development, Inc., 403 Mass. 8, 525 N.E.2d _______________________________________ Massachusetts Supreme Judicial Court (SJC) in Jackson v. Action _______ ______ 411 (1988). Jackson involved a former employee who challenged _______ his discharge as violative of the grievance procedures limned in 6 modifiable, (2) merely hortatory, (3) negotiated in a particular instance, (4) specially emphasized by the employer, (5) at-will employee, the SJC emphasized six factors; viz.: (1) the an express or implied contract altering Jackson's status as an had negotiated concerning the language contained in the manual; employer's course of conduct, as the manual's stated purpose was any time; (2) there was no firm commitment concerning the employer retained the right unilaterally to modify the manual at "policies"; (3) there was no evidence that employer and employee merely to provide "guidance" concerning the employer's reasonable juror could find that the manual formed the basis of attention" to the manual; (5) there was no evidence that, when hired or, indeed, thereafter, the employee had manifested his consider whether or not the manual's terms were (1) unilaterally To paraphrase, the SJC indicated that, in order to determine stipulated nor identified a term of employment. Id. at 415-16. ___ assent to the manual's terms; and (6) the manual neither document constitutes a binding contract, an inquiring court must whether the terms of an employer's personnel manual or kindred (4) there was no evidence that the employer had called "special seasonably accepted by the employee, and (6) characterizable as specifying some period of employment (or, alternatively, some definitive limit on the otherwise fluid nature of at-will employment).3 We recently discussed the correspondence between the Jackson factors and basic principles of contract law in Biggins _______ _______ v. Hazen Paper Co., 953 F.2d 1405 (1st Cir.), cert. granted on ________________ _____ _______ __ other grounds, 112 S. Ct. 2990, cross petition for cert. denied, _____ _______ _____ ________ ___ _____ ______ 112 S. Ct. 3035 (1992). There, we held that, when an employee seeks to show that a personnel manual forms the basis of an employment contract, Massachusetts law requires him to "establish all of the elements ordinarily necessary for the formation of a contract." Id. at 1422. Because Biggins had ___ failed to demonstrate either the occurrence of negotiations anent the manual's terms or the employer's calling of special attention to the manual prior to the time it fired him, we reversed the district court's denial of the defendant's motion for judgment n.o.v. Id. at 1423-24. ___ We think that these decisions carry the day for Hancock. For one thing, although the Jackson court took great _______ pains to stress that its decision was circumstance-specific, 525 ____________________ 3We do not read Jackson as suggesting that this list of _______ factors is necessarily exclusive. Rather, Jackson envisions _______ focusing the lens of inquiry on "the conduct of the parties, and their relation," under the totality of the circumstances in a given case. Jackson, 525 N.E.2d at 416. Here, however, neither _______ the plaintiff nor the district court suggested that the equation should be reshaped to include any integers beyond those considered by the Jackson court. _______ 7 N.E.2d at 414-16, the circumstances here seem sufficiently similar to warrant an identical outcome. For another thing, Biggins augurs poorly for Pearson's plight. In Biggins, two of _______ _______ the six Jackson factors were missing. We termed the absence of _______ these two factors "fatal to [the employee's] claim." Biggins, _______ 953 F.2d at 1424. Here, the plaintiff finds himself in a much deeper hole: the uncontroverted evidence establishes that no fewer than four of the Jackson factors are lacking. We review _______ the tally. First, the personnel manual upon which Pearson relies explicitly states that Hancock "retains the right to revise, suspend, or cancel in whole or in part any of the policies appearing in this manual without advance notice." What is more, the uncontradicted, unimpeached evidence establishes beyond peradventure that Hancock unilaterally exercised this right several times during Pearson's tenure. Second, the manual is not couched in language traditionally associated with firm commitments. Rather, it says that it "provides a description" of "personnel policies and procedures." Third, there is no evidence in the record suggesting that Pearson and Hancock negotiated concerning the contents of the manual or, indeed, that any employee was consulted in that regard. Fourth, the manual sets forth no term of employment. B B Realizing that the facts of this case are a carrion call to the vulturous flock of factors enunciated in Jackson and _______ 8 echoed in Biggins, the plaintiff gamely asserts that Jackson is _______ _______ an avocet of a different plume. He theorizes that, in Jackson, _______ the employee was attempting to establish that the manual formed the basis of an employment contract for some term greater than "at will." Thus, Pearson's thesis runs, the employee had to overcome many obstacles, including the "general rule [that], where an employment contract . . . contains no definite period of employment, it establishes employment at will." Jackson, 525 _______ N.E.2d at 412. Pearson argues that in this case, unlike in Jackson, he does not claim that the manual alters his status as _______ an at-will employee. Rather, he concedes his status, but wields the manual as a means of proving Hancock's contractual duty to provide a benefit described therein, namely, the benefit of being rehired after taking a leave of absence.4 Pearson's argument is far from epigonic; to our knowledge, it remains unaddressed in the relevant case law. Nevertheless, the district court endorsed it. We do not. No less an authority on state law than the Massachusetts Appeals Court has recently rejected this argument sub silentio, citing ___ ________ Jackson as the mainstay of its conclusion that the equal _______ opportunity policy announced in an employee handbook "did not ____________________ 4Pearson also tries to distinguish Jackson as a case in _______ which the plaintiff relied only upon the employer's dissemination of the manual and not, as here, upon additional factors such as the conduct of the employer in conformity with the manual. This effort will not withstand the mildest scrutiny. In Jackson, the _______ SJC expressly noted "the defendant's adherence to the grievance procedures," but found evidence of such a practice insufficient to overcome the inadequacies in the plaintiff's case. Jackson, _______ 525 N.E.2d at 415. 9 establish contractual rights which would support an action for breach of contract." Cherella v. Phoenix Technologies, Ltd., 32 ________ __________________________ Mass. App. Ct. 919, 586 N.E.2d 29, 31 (1992). See also Coleman ___ ____ _______ v. Boston Edison Co., ___ Mass. App. Ct. ___, ___ N.E.2d ___ __________________ (1992) [No. 91-P-133] (applying Jackson to defeat claim for _______ increased salary based on management salary program). There is, moreover, a fundamental flaw in plaintiff's approach. The definitional hallmark of employment at will is its terminability by "either the employee or the employer without notice, for almost any reason or for no reason at all." Jackson, _______ 525 N.E.2d at 412 (collecting cases). To be sure, there are exceptions, inasmuch as the law traditionally frowns upon certain specific reasons for terminating employment relationships. The fact that one's employment is at will does not mean that his employer can terminate him for invidiously discriminatory reasons, see, e.g., Mass. Gen. Laws Ann. ch. 151B, 4 (West 1982 ___ ____ & Supp. 1992), or reasons which countervail some well established public policy, see, e.g., DeRose v. Putnam Management Co., 398 ___ ____ ______ ______________________ Mass. 205, 496 N.E.2d 428, 430-31 (1986), or reasons which stem from the employer's nefarious desire to deprive the employee of benefits otherwise due him, see, e.g., Fortune v. National Cash ___ ____ _______ _____________ Register Co., 373 Mass. 96, 364 N.E.2d 1251, 1255-56 (1977). _____________ But, absent proof of a prohibited reason, the ordinary rule pertaining to termination of employment at will applies. See ___ Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, ______ _______________________________________ 589 N.E.2d 1241, 1244 (1992) (categorizing "prohibited reason" 10 situations as "exceptions to th[e] general rule"). Such proof is utterly lacking here. Pearson has not suggested, let alone proved, that Hancock possessed an improper reason for not rehiring him. The undisputed fact is that Hancock did no more than terminate (or, in a sense, refuse to reinstitute) an at-will employment relationship. So viewed, the instant case reduces to a prototypical employment case in which one party has exercised its legal right to end a relationship with no stated term. There is simply no evidence upon which a reasonable jury could find that Hancock's actions were in derogation of a contractual obligation owed to Pearson. C C It is important to emphasize that this is not a situation in which the plaintiff produced evidence that the defendant terminated an at-will employment relationship in order to deprive an employee of some other right independently due him. See, e.g., Fortune, 364 N.E.2d 1251; McCone v. New England Tel. & ___ ____ _______ ______ __________________ Tel. Co., 393 Mass. 231, 471 N.E.2d 47, 49-50 (1984); Gram v. _________ ____ Liberty Mut. Ins. Co., 384 Mass. 659, 429 N.E.2d 21, 29 (1981). ______________________ Rather, it is a situation in which the plaintiff contends that, notwithstanding the at-will nature of the employment relationship, the act of discharge (or its functional equivalent, the refusal to reinstate), in and of itself, constituted a deprivation of a contractually assured right. In other words, Pearson, while admitting that he was an at-will employee, is claiming that the company's personnel manual somehow conferred 11 upon him a contractual right to remain in Hancock's employ. Not only is such a "right" inconsistent with the gravamen of at-will employment (a concept which enables either party to scrap the relationship at any time, without notice or cause), but plaintiff's articulation of the right, brought full circle, places it squarely within the purview of Jackson and its _______ progeny.5 The situation which would have obtained if Pearson's rationale were adopted illustrates the legal impracticality of the distinction that he advocates. To skirt the term-of- employment obstacle, Pearson would have us hold that Hancock promised only that it would rehire him not that it would retain him. But, if his employment remained at will, Hancock would remain free to fire him simultaneous with, or perhaps milliseconds after, the act of reinstating him. We think this scenario forcefully indicates that the employer's putative "promise" to rehire was at best illusory and, in any event, lacked the mutuality required to constitute a binding contract. See, e.g., Jackson, 525 N.E.2d at 415 (suggesting that merely ___ ____ _______ ____________________ 5It is important to note that this appeal is limited to Pearson's suit for breach of contract. In suits based on other theories, the effect of Jackson's holding regarding terms _______ contained in employee manuals may be somewhat diluted. See, ___ e.g., Sinkevich v. School Committee of Raynham, 403 Mass. 420, ____ _________ ____________________________ 530 N.E.2d 173, 175 (1988) (in action for wrongful discharge, the employer's personnel manual could potentially confer an otherwise absent right to resign with minimal notice); Corion Corp. v. ____________ Chen, ___ F. Supp. ___, ___ (D. Mass. 1991) [1991 WL 280-288 at ____ *7-8] (holding the terms of a personnel manual to be enforceable on a theory of promissory estoppel); cf. Maddaloni v. Western ___ _________ _______ Mass. Bus Lines, Inc., 386 Mass. 877, 438 N.E.2d 351, 355 (1982) ______________________ (noting possibility of recovery in quantum meruit). 12 hortatory or unilaterally modifiable "promises" are unenforceable as illusory); Gill v. Richmond Co-Operative Ass'n, Inc., 309 ____ __________________________________ Mass. 73, 34 N.E.2d 509, 513-14 (1941) (where one party committed itself to purchase only so much as it wanted, neither party was bound by the agreement due to want of mutuality); Bernstein v. _________ W.B. Mfg. Co., 238 Mass. 589, 131 N.E. 200, 201 (1921) (because ______________ one party remained free to exit at any time, the agreement violated "the accepted legal maxim that . . . both of the mutual promises must be binding or neither will be"). IV. IV. ___ Conclusion Conclusion __________ In the last analysis, the plaintiff invites us to build a legal wall separating suits alleging that grievance procedure provisions in a personnel manual constitute a contract from suits alleging that rehire provisions constitute a contract. Accepting this invitation would require us to erect an eclectic structure without the benefit of either state-law blueprints or even the slightest intimation by the SJC that Massachusetts jurisprudence might be receptive to so unprecedented a design. We are unwilling, however, to tinker with seemingly settled state law. Nor is our renitency unfair to the plaintiff: after all, Pearson deliberately chose to bring this action in federal court when the state courts were equally available to him.6 A litigant who ____________________ 6Plaintiff's counsel suggested at oral argument that Pearson's suit was brought in federal court because it included an ERISA count along with the salmagundi of state-law claims. But, the state courts have concurrent original jurisdiction over ERISA claims which are brought by participants to recover 13 seeks out a federal forum when a state-court forum is equally available to him cannot justifiably complain if the federal court manifests great caution in blazing new state-law trails. See ___ Ryan v. Royal Ins. Co., 916 F.2d 731, 744 (1st Cir. 1990); Porter ____ ______________ ______ v. Nutter, 913 F.2d 37, 41 (1st Cir. 1990). ______ We need go no further. On the record before us, the plaintiff has failed sufficiently to differentiate his case from those of the unsuccessful plaintiffs in Jackson and Biggins. _______ _______ Thus, these precedents apply to determine whether the employment manual at issue here elevated Pearson's status above that of an at-will employee. If that potential did not exist, Pearson's case evaporates. Because, as we have already explained, the record is devoid of evidence that would enable Pearson to vault this hurdle, the district judge erred in denying Hancock's motion for judgment as a matter of law. Reversed. Reversed. ________ ____________________ benefits due under employee welfare benefit plans. See 29 U.S.C. ___ 1132(e)(1). Pearson's suit is of this genre. 14