Fecteau, J.
Plaintiff, Gayle Zereski (“Zereski”), brought this action against defendants alleging various tort and contract claims arising out of the publication of allegedly defamatory material printed in a union newsletter. Defendants, American Postal Workers Union, Moe Biller, and Douglas Holbrook, filed the instant motion to dismiss pursuant to Mass.P.Civ.P. 12(b)(1) & (6) and Rule 4(j). As grounds for this motion, defendants assert that this Court does not have jurisdiction over them; the plaintiffs First Amended Complaint (hereinafter “Complaint”) contains no factual allegations on which defendants could be found liable; and the plaintiff failed to achieve service of process within 90 days of filing her Complaint. For the following reasons, defendants’motion is allowed in part, and denied in part.
PROCEDURAL BACKGROUND
Plaintiff filed her complaint with this Court on July 18, 1997. Service of process was made on the defendants outside of the 90-day period prescribed by Mass.R.Civ.P. 4(i). However, prior to the expiration of the 90-day period, on October 15, 1997, plaintiff flied with this Court an ex parte motion to extend for an additional 90 days tracking order deadlines and the deadline for service of process. That motion was allowed on December 1, 1997 (Travers, J.), giving effect to the service previously made.
Defendants, American Postal Workers Union, Morris (“Moe”) Biller, former president of the national union, and Douglas Holbrook, secretary/treasurer of the national union, jointly flied a motion to dismiss on January 22, 1998. On February 18, 1998, the Court (Bohn, J.) allowed defendants’ motion to dismiss because defendants had complied with Rule 9A and the plaintiff filed no opposition. Plaintiff moved for reconsideration, which was allowed by the Court (Bohn, J.) on February 25, 1998. A hearing was held on defendants’ motion for summary judgment before this Court on March 27, 1998. Presently, before the Court is defendants’ motion to dismiss or in the alternative for summary judgment.
FACTUAL BACKGROUND
Ms. Zereski was employed by the Central Massachusetts Area Local chapter of the American Postal Workers Union as an office secretary since January 4, 1989. In her duties as a secretary, Ms. Zereski worked directly with the vice-president of the union, the treasurer and chief steward.
This action arises out of the July 12, 1994 publication of the union news letter “Union Views,” which contained a report of charges lodged against various officials of the Central Massachusetts chapter of the American Postal Workers Union. One such charge printed in the “Union Views” stated:
No less than 30 times during the year 1992[,] Mr. Langevin and Mr. Bounds exposed A.P.W.U. to possible civil liability. On the following dates ... check numbers ... in the account of the central MA area local were made out to Gayle Anderson Zereski; signed and cosigned by Mr. Langevin and Mr. Bounds. These checks included a variety of vulgar, unprofessional and sexually derogatory remarks such as “salary for bimbo,” “salaiy for big tits,” “salary for airhead,” and “salary for bitch.” Also no fewer than two times in December 1991 pay vouchers were made out to Gayle Anderson Zanaski (sic) and signed by Mr. Langevin and Mr. Bounds. These pay vouchers listed Ms. Anderson Zereski’s address as “69 Big Tit Lane, Airhead, MA.” By their own actions Mr. Langevin and Mr. Bounds exposed this Local to a possible Civil and/or Criminal suit.
Immediately following the charge, the Committee’s findings were published in the “Union Views”; they read:
The Committee finds and recommends that the National Executive Board find that the former Local Treasurer Richard C. Bounds exposed the Local to civil liability by writing on Local checks, a variety of vulgar, unprofessional and sexually derogatoxy remarks directed at the secretary employed by the Local.
In response to these charges, Brother Bounds acknowledged that he had written the remarks attributed to him on the Local checks given to the Local’s secretary. His explanation included the fact that he is known as a “ball buster.”
The Committee recommends that the National Executive Board formally condemn the actions of the Local Treasurer in writing these words or phrases on the checks presented to the Local Secretary. The former Treasurer’s explanation that he is aware that he is “perceived” as a “sexist by women that I joke with and banter with," serves only to exacerbate the seriousness of his conduct. In his further defense, the former Treasurer asserts that the Local’s secretary considers his comments on her checks to be a joke and engages in banter with him. Even if this is entirely true, it is the Committee’s *57 finding that the former Treasurer’s conduct must be condemned and an appropriate remedy provided in response to the charges.
Accordingly, the Committee recommends that the former Treasurer Richard C. Bounds be barred from running for Union office in the next election of the Local Union.
Ms. Zereski was on vacation on the publication date of the newsletter. She returned to work on July 18, 1994 and found on her desk a copy of the “Union Views” opened to the page containing the preceding charge and findings. Ms. Zereski stated in her affidavit in opposition to the present motion, that she initially thought the copy of the newsletter was a draft. She then contacted Frank Rigiero, president of the local union, in an attempt to stop the publication and circulation of the newsletter. She informed him that she found the statements upsetting, offensive and humiliating. Ms. Zereski stated in her affidavit that Mr. Rigiero answered that there was nothing he could or would do to stop the publication. Following her conversation with Mr. Rigiero, Ms. Zereski telephoned the publisher of the “Union Views," from whom she learned that Mr. Rigiero and other representatives of the national union had discussed the contents of the publication during the previous week and that the newsletter had already been mailed out. The newsletter has a circulation of approximately two thousand copies; one thousand to members and another thousand to local presidents and newsletter editors nationwide.
Ms. Zereski’s Complaint alleges that the members of the Board of Directors for the local union voted in July 1994 to publish the statements about her in the newsletter and that the board obtained the information from her personnel file without her permission. Ms. Zereski further alleges that following the publication of the newsletter, she began receiving harassing telephone calls from union members, who used obscene, degrading language, requested sexual favors and made reference to language contained in the newsletter. On July 29, 1994, Ms. Zereski took sick leave from work. She alleges that she was disciplined for taking leave and for attempting to suppress the contents of the newsletter by removing it from her office and trying to block its publication. Subsequently, Ms. Zereski’s health insurance and 401K contributions were terminated in 1996, and her employment was terminated in 1997. Thereafter, Ms. Zereski filed a complaint with the Massachusetts Commission against Discrimination (“MCAD”) under G.L.c. 15IB, and a complaint in the Superior Court to pursue other causes of action.
DISCUSSION
The defendants have moved to dismiss plaintiffs Complaint for lack of subject matter jurisdiction pursuant to Mass.R.Civ.P. 12(b)(1); for failure to state a claim upon which relief can be granted pursuant to Mass.R.Civ.P. 12(b)(6); for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c); and for summary judgment pursuant to Mass.R.Civ.P. 56(c). Because “matters outside the pleadings [were] presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]” Mass.R.Civ.P. 12(b)&(c).
A motion for summary judgment is in order and shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995). The moving party bears the burden of showing that there is no genuine issue as to any material fact on every relevant issue, and that the moving party is entitled to judgment as a matter of law. In a case where the opposing parly will have the burden of proof at trial, the moving party is entitled to summary judgment if he demonstrates, by materials described in Rule 56(c), unmet by countervailing materials, that the opposing party “has no reasonable expectation of proving an essential element of that parly’s case.” Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991).
1. Statute of Limitations
As a threshold matter, this Court must decide whether, as defendants assert, the plaintiff is barred from bringing this action by the applicable statute of limitations. General Law Chapter 260, §4, requires actions for libel to be brought within three years of the accrual of the cause of action. Plaintiffs Complaint was filed on July 18, 1997, three years to the day from the date on which she returned from vacation to find a copy of the “Union Views” open on her desk. Defendants contend that Ms. Zereski’s cause of action accrued on July 12, 1994, the date on which the “Union Views” was published. Plaintiff argues that her cause of action did not accrue until July 18, 1994, because she could not have discovered her injury until that date.
As defendants note in their memorandum, “a cause of action accrues on the happening of an event likely to put plaintiff on notice.” Hendrickson v. Sears, 365 Mass. 83, 89-90 (1974). As a general rule in defamation cases, a cause of action accrues and the statutory period begins to run on the date of publication. Polchlopek v. American News Co., 73 F.Supp. 309 (D. Mass. 1947). Zereski does not dispute the applicability of the statute of limitations to her causes of action. Instead, she disputes when the cause of action accrued. She argues that the “discovery rule” ought to apply. The discovery rule “provides that a cause of action for the redress of an ‘inherently unknowable’ wrong does not accrue until the harm becomes known, or in the exercise of reasonable diligence should have become known, to the injured party.” Catrone v. Thor *58 oughbred Racing Associations, 929 F.2d 881 (1st Cir. 1991) (citing Flynn v. Associated Press, 401 Mass. 776 (1988)). The running of the statute of limitations is delayed while the facts of the wrong remain unknowable. Conversely, the statute is not tolled if only the legal theory is not known. Catrone, 929 F.2d at 885; Gore v. Daniel O’Connell’s Sons, Inc. 17 Mass.App.Ct. 645 (1984). In other words, “[t]he ‘notice’ required is not notice of every fact which must eventually be proved in support of the claim . . . Rather, ‘notice’ is simply knowledge that an injury has occurred.” Flynn v. Associated Press, 401 Mass, at 780 (quoting White v. Peabody Constr. Co., 386 Mass. 121, 130 (1982)).
In this case, the plaintiff could not have known that she had been injured because she could not have known of the publication of the allegedly defamatory remarks until she returned from vacation. There is no allegation by the defendants that Ms. Zereski had knowledge that these charges would be printed prior the publication of the “Union Views.” Neither do the defendants assert that the plaintiff was or could have been aware of the publication while she was on vacation. Therefore, at the summary judgment stage, because there is no dispute of fact regarding the plaintiffs knowledge or lack of knowledge of the publication, as a matter of law, defendants’ motion must be denied on this issue. The plaintiffs claims are not barred by the statute of limitations.
2. Defamation/Libel
Count I of plaintiffs Complaint alleges that the defendants defamed her by the publication of the newsletter. Defendants claim that the statements were constitutionally protected statements of opinion; that the publication is constitutionally protected as a matter of public concern; and that the' statements were made under privileged circumstances.
Defamation is the intentional or negligent publication to a third person, without a privilege to do so, of a false statement of fact about another that results in harm to the other’s reputation. Restatement (Second) Torts §§558, 565, 566 (1977). To be defamatory, the writing must hold up the plaintiff to ridicule, scorn or contempt in a considerable and respectable class of the community, and must not be privileged. Muchnick v. Post Publishing Co., 332 Mass. 304, 306 (1955). Finally, the plaintiff must prove some degree of fault on the part of the defendants. Because plaintiff is a private person, she need only prove negligent publication. “Under the negligence standard adopted in Stone v. Essex County Newspapers, Inc., . . . the defendants are required to act ‘reasonably in checking on the truth or falsity ... of the communication before publishing it.’ ” Apple v. Daily Hampshire Gazette, 395 Mass. 32, 36 (1985) (quoting Restatement (Second) of Torts §580B, comment g (1977)).
First, this Court must decide “whether the [statements] in question are ‘reasonably susceptible of a defamatory connotation, so as to warrant their submission to a jury to determine if in fact the defamatory connotation was conveyed.’ ” Jones, 400 Mass, at 791 (quoting Cianci v. New Times Publishing Co., 639 F.2d 54, 60 (2d Cir. 1980)) (citations omitted). Defendants cannot escape liability because the statements were published in the context of quoting another.[2] Here, the statements about the plaintiff were clearly susceptible of a defamatory connotation. There was no ambiguity or innuendo in terms such as “bimbo,” “airhead,” and “bitch.” Accordingly, it is for a jury to decide whether a defamatory meaning was in fact conveyed.
Defendants contend that the statements are constitutionally protected as an expression of opinion. Whether a statement is an allegation of fact or an opinion is a question of law, if the statement unambiguously constitutes either fact or opinion. Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 733 (1986). However, “if a statement is susceptible of being read by a reasonable person as either a factual statement or an opinion, it is for the jury to determine.” Id. at 733-34. The relevant inquiry “is not whether challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact.” Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 727 (1st Cir. 1992).
In support of their argument, defendants cite several cases in which courts found extremely pejorative and derogatory comments to be statements of opinion. See Edwards v. New York Times Co., 434 U.S. 1002 (1977); Old Dominion Branch No. 496, Nat’l Assoc. of Letter Carriers v. Austin, 418 U.S. 264, 283 (1974). However, the objectionable nature of the comment does not bear on whether it is a fact or an opinion. Instead, as noted above, the inquiry is whether the statement may be understood to convey provable assertions of fact. Here, the statements were unambiguously statements of fact. See King v. Globe Newspaper Co., 400 Mass. 705, 717 (1988). They were accusations directed at the union officials who made the statements. The published statements cannot be construed as merely an expression of opinion.
Defendants argue that, even if the statements were defamatory, they were made in a context that rendered them privileged. Fair comment on matters of public concern is protected. “Whether . . . speech addresses a matter of public concern must be determined by [the expression’s] content, form and context ... as revealed by the whole record.” Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 105 S.Ct. 2939, 2946 (1985) (quoting Connick v. Myers, 103 S.Ct. 1684, 1690 (1983)). In this case, it seems likely that at trial defendants can prove the existence of this conditional privilege. A conditional privilege can be abused if the publication was unnecessary, unreasonable or excessive. Bratt v. International Business Machines Corp., 392 Mass. 508, 512-13 (1984) (citations omitted). This Court, therefore, finds that despite the apparent exis *59 fence of a conditional privilege, a disputed issue of fact exists as to whether the inclusion of plaintiffs name and the specific derogatory comments were an abuse of the privilege. Accordingly, summary judgment is denied as to plaintiffs defamation claim (Count I).
3.False Light
In her Complaint, plaintiff pursues a cause of action for “false light.” Although well recognized in other jurisdictions and by the Restatement of Torts, the Supreme judicial Court has noted in several decisions that false light is not recognized as a cause of action in Massachusetts. See e.g., ELM Medical Laboratory, Inc. v. Rko General, Inc., 403 Mass. 779, 787 (1989); Yovino v. Fish, 27 Mass.App.Ct. 442, 450 (1989). Accordingly, summary judgment is allowed for defendants on plaintiffs false light claim (Count II).
4.Misappropriation of Name
Chapter 214, §3A prohibits the use of a persons name, portrait or picture “for advertising purposes or for the purposes of trade without his written consent!.]” The common law tort is set out in §652C of the Restatement as “Appropriation of Name or Likeness,” which provides: “[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.” Restatement (Second) of Torts, §652C.
Either, under the statute, which the defendants do not .cite, or the common law claim, the plaintiff must prove that the unauthorized use of her name inured to the financial benefit of the defendants. “[T]he interest which is protected by G.L.c. 214, §3A, is the interest in not having the commercial value of one’s name, portrait or picture appropriated to the benefit of another.” Tropeano v. Atlantic Monthly Co., 379 Mass. 745, 749 (1980). However, “[t]he value of one’s name, portrait or picture is not appropriated ‘when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity.’ ” Id. (quoting Restatement (Second) of Torts §652C, Comment d (1977)). Therefore, the inquiry is whether the defendants used plaintiffs name incidentally or deliberately to exploit its value for advertising or trade purposes.
In this case, there has been no allegation by plaintiff that defendants used her name in order to promote themselves or a product, nor is there any allegation of motivation of financial gain or desire for publicity by defendants. The plaintiff has not produced any materials on summary judgment that tend to show that defendant benefitted financially from the use of her name. Accordingly, summary judgment must allowed for the defendants on Count III.
5.Tortious Interference with Advantageous Contractual Relations
“In its classic form, the tort of interference with contractual relations involves the undoing of a business arrangement bound by contract.” Chemawa Country Golf, Inc. v. Wnuk, 9 Mass.App.Ct. 506, 509 (1980). “A plaintiff is entitled to recover against a defendant for procuring a breach of contract if he establishes that (1) he had an existing contract with a third party, (2) the defendant knew that fact, (3) the defendant induced the other person to break the contract and (4) damage was incurred.” United Truck Leasing Corp. v. Geltman, 26 Mass.App.Ct. 847, 852 (1989). See also Wright v. Sherman Hospital for Crippled Children, 412 Mass. 469, 476 (1992); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991).
The general rule regarding intentional interference with contractual relations in an employee /employer context is that an employer cannot be held liable for tortious interference with its own contract with the plaintiff-employee. Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 663 (1981). Additionally, malicious interference by a supervisory employee will not be imputed to the employer. Clement v. Rev-Lyn Contracting Co., 40 Mass.App.Ct. 322, 323 (1996).[3] Therefore, defendants are entitled to summary iudgment on Count IV.
6.Infliction of Emotional Distress
In Payton v. Abbott Labs, 386 Mass. 540, 557 (1982), the Supreme Judicial Court set out the elements of negligent infliction of emotional distress: “(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.” See also Sullivan v. Boston Gas Co., 414 Mass. 129 (1993).
The elements of the tort of intentional infliction of emotional distress are: (1) an intentional act, (2) amounting to extreme and outrageous conduct, (3) causing severe emotional distress to another, (4) by one not privileged to do so. Foley v. Polaroid Corp., 381 Mass. 545, 552-53 (1980).
Defendants argue that plaintiffs emotional distress claims, as well as other claims, are barred by the Workers’ Compensation Act, G.L.c. 152, §24 (“the Act”). The first question this Court must ask in assessing whether plaintiffs common law tort claims are barred is whether the claim is to remedy a “personal injury” compensable under the Act. Foley v. Polaroid Corp., 381 Mass. 545, 546-47 (1980) (hereinafter “Foley I”).
The Workers’ Compensation Act exists to compensate employees for diminished earning capacity impaired by an actual physical or mental injury. Foley I, 381 Mass, at 552 n.5. Where an employee sues his employer for an injury sustained on the job, and an essential element of the tort is a physical or mental injury, the injury is then exclusively compensable under the Act. Accordingly, the employee’s common law claims are then barred by G.L.c. 152, §24. Id. If a *60 physical or mental injury is not an essential element of the tort, the claim is not barred and the employee may recover for mental distress incident to the claim. Foley v. Polaroid Corp., 400 Mass. 82 (1987) (hereinafter “Foley II”). Accordingly, insofar as plaintiffs emotional distress claims (Counts V and VI) are alleged as a separate tort, they are barred by the exclusivity provisions of the Act. However, plaintiff may not be barred from recovering damages from her mental distress that resulted from the alleged defamation, invasion of privacy and other torts.
7. Invasion of Privacy
In her Complaint, Ms. Zereski alleges that the defendants invaded her privacy by disclosing the contents of her personnel records, which contained humiliating, degrading and vulgar statements about her. She alleges that this conduct violated her common law right to privacy as well as her rights under G.L.c. 214, §1B. The Supreme Judicial Court has never decided whether to recognize a common law invasion of privacy right. See Alberts v. Devine, 395 Mass. 59, cert. denied 474 U.S. 1013 (1985); Commonwealth v. Wiseman, 356 Mass. 251, 258 (1969); Frick v. Boyd, 350 Mass. 259, 263 (1966). However, G.L.c. 214, §1B is considered roughly analogous to the common law category of invasion privacy law proscribing public disclosure of private facts. Bratt v. International Business Machines Corp., 392 Mass. 508, 519, n.15 (1984). Therefore, this Court finds that G.L.c. 214, §1B adequately protects plaintiffs rights and a common law claim for invasion of privacy is superfluous. Accordingly, Count VII is dismissed.
Section IB of chapter 214 provides that, “[a] person shall have a right against unreasonable, substantial or serious interference with his privacy!.]" In a claim under this statute, a plaintiff must show that the defendants’ conduct was unreasonable or unjustified and that the conduct amounted to a serious or substantial interference with his privacy. Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-18 (1991).[4] The Supreme Judicial Court has not yet defined the boundaries of the statutoiy terms; however, it has said that in determining whether there is a violation of § IB, it is necessary to balance privacy interests with the interest served by the disclosure. Bratt v. International Business Machines Corp., 392 Mass. 508, 521 (1984).
Here, the defendants argue that the disclosure of plaintiffs name as well as the specific nature of the charges that involved her was done for a legitimate business purpose. Plaintiff takes the position that the inclusion of her name was wholly gratuitous. This court finds that the balancing of the interests involved raises issues of fact best left to the jury. Accordingly, defendants’ motion on Count VIII is denied.
8. Breach of Contract
Ms. Zereski alleges the existence of an employment contract with the defendants and that defendants breached the contract by disciplining her, terminating her health benefits and other benefits, and ultimately terminating her from employment. As a result of defendants’ actions, Zereski claims that she incurred and continues to incur lost wages, lost benefits, financial losses, medical expenses, pain and suffering, severe emotional distress, physical injuries, attorneys fees and other costs.
Defendants do not specifically dispute the existence of an employment contract, but argue that the breach of contract claim should be dismissed under a Rule 12(b)(6) standard because the nature of the employment contract was not stated with specificity in plaintiffs Complaint; the claim is preempted by section 301 of the National Labor Relations Act (“NLRA’j; and plaintiff failed to exhaust grievance/arbitration procedure outlined in the collective bargaining agreement.
In order to sustain a breach of contract claim on a motion to dismiss standard, a plaintiff “must plead: (1) that the parties had an agreement supported by valid consideration; (2) that [plaintiff was] ready, willing and able to perform; (3) that defendant’s breach has prevented them from performing; and (4) that [plaintiff was] damaged." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (citing Singarella v. City of Boston, 342 Mass. 385 (1961)).
In her Complaint, plaintiff did not allege with specificity the terms of the contract, its duration, when it was entered into, or the obligations on the parties. The allegations in plaintiffs Complaint do not “state with ‘substantial certainty’ the facts showing the existence of the contract and the legal effect thereof.” Doyle, 103 F.3d at 194 (citing Pollock v. New England Tel. & Tel. Co., 289 Mass. 225 (1935)). On summary judgment, plaintiff had the opportunity to rebut the defendants’ arguments, and perhaps, could have easily done so by simply producing a copy of the alleged contract. However, plaintiff has not done so, nor has she presented any other materials bearing on the employment contract between the parties. Therefore, at the summary judgment stage, the Court must find that the defendants have demonstrated that the plaintiff “has no reasonable expectation of proving an essential element of that [her] case” on Count IX. Kourouvacilis, 410 Mass. at 716.
9.Wrongful Termination
Ms. Zereski alleges that defendants wrongfully terminated her “in retaliation for her attempts to work in an environment free from Defendants’ constant degradation of her, in violation of public policy.”
The general rule is that at-will employees may be discharged for any reason or no reason at all. However, at-will employees may have a cause of action for wrongful discharge when the employer has violated clearly established public policy. DeRose v. Putnam Management Co., 398 Mass. 205 (1986). Massachusetts also recognizes a cause of action for breach of the *61 covenant of good faith and fair dealing. National Cash Register, 373 Mass. at 102. However, the doctrine of good faith and fair dealing is applicable only to at-will employees. McCone v. New England Telephone & Telegraph Co., 393 Mass. 231, 233 n.6 (1984).
As noted above, although the plaintiff alleges the existence of an employment contract, she omitted any reference in her Complaint to a written contract for a specified term. The defendants assert for the purposes of this Count, that plaintiff is a contract employee and not an at-will employee. Accordingly, this Court finds a disputed issue of material fact as to whether plaintiff was an at-will employee or one under contract for a specified term. Therefore, summary judgment is denied as to Count X.
10. Conspiracy
Count XI of plaintiffs Complaint alleges the tort of civil conspiracy against all defendants for conspiring to commit torts against her, specifically the torts alleged in Counts I through XL
There are two types of civil conspiracy. First, there is a limited cause of action for a coercive type of conspiracy. Aetna Casualty Surety Co. v. P&B Auto-body, 43 F.3d 1546, 1563 (1st Cir. 1994). The second type of civil conspiracy is one akin to a theory of common law joint liability in tort; that is, a conspiracy deriving from a “concerted action.” Id. An element of coercion is not required in this type of conspiracy cause of action. Kurker v. Hill 44 Mass.App.Ct. 184, 188 (1988). For liability to attach, there must first be a common design or agreement, express or implied, and second, proof of some tortious act done in furtherance of the plan. Aetna Cas. Sur. Co. 43 F.3d at 1564. See also Stock v. Fife, 13 Mass.App.Ct. 75, 82 n. 10 (1982) (“In the.tort field, the doctrine appears to be reserved for application to facts which, manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result”).
Plaintiff has alleged that several of the defendants discussed whether to include her name prior to publication. Additionally, given that this Court has denied defendants’ motion on plaintiffs defamation claim, there exists a disputed issue of material fact as to whether the defendants had a common plan, whether implicit or explicit, to commit torts against Ms. Zereski, and whether defendants engaged in tortious activity. Accordingly, summary judgment is inappropriate on plaintiffs claim of civil conspiracy.
ORDER
For the foregoing reasons, defendants American Postal Workers Union, Moe Biller, and Douglas Holbrook’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) & (6), and Rule 4(j), is ALLOWED as to Counts II, III, IV, V, VI, VII and IX, and is DENIED as to Counts I, VIII, X and XI.[5]

Absent a privilege, a republisher is liable as a publisher. Dulgarian v. Stone, 420 Mass. 843, 849 (1995). If words are defamatory, their republisher may not avoid liability by truthfully attributing them to someone else. “Liability for a defamatory statement may not be avoided ‘merely [by] adding a truthful preface that someone else has so stated.’ ” Jones v. Taibbi 400 Mass. 786, 792 (1987) (quoting Ricci v. Venture Magazine, Inc., 574 F.Supp. 1563, 1572 (D.Mass. 1983)).

 It should be noted, however, that if supervisors, acting within the scope of their employment, engage in bad faith and unfair conduct, their actions could support a finding of breach of good faith and fair dealing implicit in every employment contract. Those actions could also be properly attributed to the employer. Gram, 384 Mass. at 663 n.3; Fortune v. National Cash Register Co., 373 Mass. 96, 102 (1977).

See also O’Connor v. Police Commissioner of Boston, 408 Mass. 324, 330 (1990) (held that the language of the statute requires that the invasion of privacy be both unreasonable and substantial or serious: “We think that it is highly unlikely that the Legislature intended to provide a right of action to a person whose privacy was substantially or seriously Interfered with, but reasonably so").

CountXI, Conspiracy, is misnumbered in plaintiffs Complaint as “Count XII.”