Jeffrey A. NELSON, Plaintiff,

v.

ENERGY EXCHANGE CORPORATION, Donaldson, Lufkin and Jenrette Securities Corporation, Warren R. Haught, Barry D. Haught, and Glenn R. Haught & Sons, Defendants.

Civ. A. No. 84–2321–C.

United States District Court, D. Massachusetts.

Dec. 19, 1989.

Barry C. Klickstein, Paul G. Roberts, Forman, Roberts, Klickstein, & Levy, Boston, Mass., for plaintiff.

William Porter, Gordon T. Walker, McDermott, Will and Emery, Boston, Mass., for Donaldson, Lufkin and Jenrette.

Don M. Kennedy, Bradford S. Gentry, Goodwin, Procter & Hoar, Boston, Mass., for Energy Exchange Corp.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case involves a transaction by which Energy Exchange Corporation ("EEC") acquired oil and gas properties from owners of such properties in exchange for EEC stock ("The Exchange Offer"). The plaintiff, Jeffrey A. Nelson, was one actor in this transaction. He brought this legal action against various other actors to recover a commission for services he performed in connection with the Exchange Offer. The defendants named in this action are: EEC, the corporation engaged in oil and gas exploration, acquisition, development and production which acquired properties in exchange for its stock; DLJ, the Dealer Manager for the Exchange Offer; Warren R. Haught, Barry D. Haught, and Glenn L. Haught & Sons, the owners of the properties exchanged. This case is before the Court on a motion for summary judgment filed by the defendant Donaldson, Lufkin and Jenrette Securities Corporation ("DLJ").

For the purpose of deciding this motion, the relevant, undisputed facts are as follows. In early 1981, Nelson interviewed with Robert Swain, Chairman of the Board and President of EEC. Swain explained to Nelson a proposed deal whereby owners of oil and gas properties would tender their properties to EEC in exchange for shares of EEC stock. Crown Financial Corporation ("Crown Financial") would act as Dealer Manager for the Exchange Offer. Swain was also President, a Director and controlling shareholder of Crown Financial. Swain offered Nelson a job as a "wholesaler" or "locator," and Nelson accepted. The corporation employing Nelson was Crown Financial. Nelson's responsibilities as a "locator" primarily involved locating local and regional securities dealers and enlisting them to act as Soliciting Dealers for the Exchange Offer. Nelson was also to assist these Soliciting Dealers in approaching companies or persons with ownership interests in oil and gas properties. Nelson was to receive a commission of $0.07 for each share of EEC stock issued in exchange for interests in gas and oil properties which he located.

In the course of his employment, Nelson met C. Andrew Russell ("Russell") and Sam S. Zacharias ("Zacharias"), two principals in a securities firm named Three Rivers Energy Resources Company ("Three Rivers") which was registered with the United States Securities and Exchange Commission ("SEC"). After Nelson explained the details of the Exchange Offer to Russell and Zacharias, they agreed to act as Soliciting Dealers and work with Nelson to obtain the participation of holders of oil and gas properties known to them. Nelson showed Russell and Zacharias an EEC Preliminary Prospectus dated August 21, 1981 which stated that EEC would pay Soliciting Dealers a commission of $.40 for each share of stock issued in exchange for interests in oil and gas properties. The Prospectus further stated that the participation of a Soliciting Dealer was to be evidenced by the holder of the property filling in the name of the Dealer on a Letter of Acceptance to be filed with the EEC upon acceptance of the Exchange Offer.

Thereafter, Russell and Zacharias contacted Warren A. Haught ("Haught") with whom they had a longterm business relationship. Haught owned or controlled or was affiliated with entities that owned or controlled extensive oil and gas properties (the "Haught Properties"). Russell and Zacharias solicited Haught's participation in the Exchange Offer. On September 1, 1981, Russell and Zacharias sent Haught the August 21 Preliminary Prospectus of

EEC and a data sheet for submission of gas and oil properties to EEC for evaluation. On September 1, Russell and Zacharias also sent Haught a letter confirming that they were the sole source of his introduction to EEC. The letter also confirmed that if Haught or any of his affiliated interests tendered properties to EEC for exchange, Russell and Zacharias would be entitled to commission as specified in the August 21 Preliminary Prospectus, and Haught would not consummate the exchange unless Russell and Zacharias received such compensation. Subsequently, Haught met with Russell, Zacharias and Nelson. Nelson then brought Haught, Russell and Zacharias to meet with Swain to review the terms and conditions of Haught's participation in the Exchange Offer. Haught attended this meeting on behalf of himself, B.D. Haught, Glenn L. Haught & Sons, and each of the Haught Properties.

In November 1981, Crown Financial resigned as Dealer Manager and was succeeded by DLJ. DLJ's agreement with EEC provided that DLJ would receive the Soliciting Dealer's commission where no Soliciting Dealer was named in the Letter of Acceptance. On December 14, 1981, The Board of Directors of EEC voted to assume the obligations of Crown Financial to Nelson and others. After DLJ became Dealer Manager for the exchange Offer, EEC advised Russell and Zacharias that the rules of the National Association of Securities Dealers ("NASD") prevented the payment of commissions to any securities firm that was not a NASD member. Because Three Rivers was not a NASD member, Russell and Zacharias assigned their rights as Soliciting Dealer of the Haught Properties to T. Bob Investments, Inc. ("T. BOB"), a NASD member firm. Zacharias also registered as a Representative of T. Bob. Haught consented to this assignment in writing by endorsing the September 1 letter agreement between Haught and Russell and Zacharias.

The Haught properties were reevaluated several times. EEC and Haught engaged in continuous discussions and negotiations as to which of the Haught Properties would be included in the Exchange Offer. In the Spring of 1982, Haught and his affiliated interests were experiencing serious financial problems. Before certain of the Haught Properties could be conveyed to EEC, various bank mortgages and liens needed to be paid because the banks were unwilling to accept EEC stock as substitute collateral for the properties.

On or about September 24, 1982, DLJ and other investors formed a syndicate, memorialized in a Letter of Understanding, to purchase various gas and oil interests for tender to EEC in Exchange for stock. DLJ and this group of investors purchased for cash those Haught properties which were encumbered by mortgages and liens and immediately tendered the properties to EEC pursuant to the Exchange Offer. The letter of Acceptance delivered to EEC by the group for these Haught properties did not name T. Bob as Soliciting Dealer. At about the same time, Haught and his affiliates tendered the remaining Haught properties to EEC as part of the Exchange Offer.

In this action, Nelson seeks to recover the commission he earned by locating Russell and Zacharias to participate in the Exchange Offer as Soliciting Dealers and assisting them in bringing the Haught Properties into the Exchange Offer. Nelson brings this action against EEC, DLJ, and Haught and his affiliates. In Nelson's complaint, he asserts three causes of action: 1) Breach of Contract; 2) Conspiracy to Interfere with Advantageous Business and Contractual Relations, and 3) Unfair or Deceptive Business Practices under Mass. Gen.Laws ch. 93A. Defendant DLJ moves for summary judgment on each of these counts.

### I.

### *Standard for Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ. Pro. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party may satisfy this burden by showing that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Only after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact does the party opposing the motion bear the burden of responding. *Id.* at 321, 106 S.Ct. at 2551; *Adickes,* 398 U.S. 159–60, 90 S.Ct. 1609. The opposing party may not rest upon the mere allegations or denials in its pleadings, but must respond with affidavits or otherwise to show the existence of a genuine issue for trial. Fed.R.Civ.Pro. 56(e); *Adickes,* 398 U.S. 159–60, 90 S.Ct. 1609. A dispute about a material fact is a "genuine issue" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In essence, the inquiry is whether a jury question is presented. *Id.* at 249, 106 S.Ct. at 2510. On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Mindful of this standard, this court considers the defendant's motion for summary judgment on each of plaintiff's claims.

## II.

### Breach of Contract—Promissory Estoppel

■ Plaintiff Nelson's contract claim against DLJ is based upon a theory of promissory estoppel. Massachusetts has adopted the theory of promissory estoppel. *Treadwell v. John Hancock Mutual Life Insurance Company,* 666 F.Supp. 278, 286 (D.Mass 1987). *See Loranger Construction Corp. v. E.F. Hauserman, Co.,* 376 Mass. 757, 760–61, 384 N.E.2d 176 (1978). Rejecting the term "promissory estoppel" as confusing, the Massachusetts Supreme Judicial Court stated that a promise enforceable by virtue of reliance is a "Contract" and is enforceable pursuant to a "traditional contract theory" antedating the modern doctrine of consideration. *Loranger,* 376 Mass. at 760–61, 384 N.E.2d 176. The Massachusetts Appeals Court thereafter quoted Section 90(1) of the Restatement (Second) of Contracts to detail the elements of this contractual theory:

> (1) A promise which the promissor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise.

Restatement (Second) of Contracts § 90(1), *quoted in McAndrew v. School Committee of Cambridge,* 20 Mass.App. 356, 363, 480 N.E.2d 327 (1985); *Treadwell,* 666 F.Supp. at 287.

Plaintiff Nelson stated in his deposition that DLJ, through its agents Rosenthal and John Maher assured him on a number of occasions that he would receive his commission for locating and bringing in the Haught properties. In his deposition, Nelson further stated that although DLJ's agents never explicitly stated that DLJ would cut the check, they assured him that now that DLJ was Dealer Manager and running the deal, the deal would go through and he would be paid. Nelson stated that he absolutely believed that DLJ was responsible for getting that check written, no matter by whom. According to the depositions of Nelson and Joseph Hayes, in house counsel and a principal of EEC, at the time of the closing of the Exchange Offer, DLJ was running everything and telling EEC what to do. In reliance on DLJ's assurances, plaintiff stated in his deposition, he did not bring suit earlier, specifically, prior to the closing of the exchange Offer.

■ For the purposes of its summary judgment motion, defendant DLJ does not dispute Nelson's deposition testimony or any of the facts stated above. DLJ argues that there is no genuine issue of material fact and on the foregoing facts, it is entitled to judgment as a matter of law. Upon reviewing the facts and the inferences to be drawn from those facts in the light most favorable to Nelson, this Court finds that the evidence is such that a reasonable jury could return a verdict in favor of Nelson on a theory of promissory estoppel. Accordingly, DLJ is not entitled to judgment as a matter of law and DLJ's motion for summary judgment on the promissory estoppel claim should be denied.

## III.

### *Intentional Interference with Contractual Relations*

■ In his complaint, plaintiff Nelson also asserts against DLJ a claim for interfering and conspiring to interfere with his advantageous business and contractual relationships with Crown/EEC. Nelson alleges that DLJ conspired with the other named defendants to deprive him of the fees and commissions to which he was entitled under his contract with Crown/EEC. The elements of the tort of interference with an advantageous relationship are: 1) a business relationship or contemplated contract of economic benefit; 2) the defendant's knowledge of such relationship; 3) the defendant's intentional interference with it; and 4) the plaintiff's loss of advantage directly resulting from the defendant's conduct. *Comey v. Hill,* 387 Mass. 11, 19, 438 N.E.2d 811 (1982). DLJ argues that there is no genuine issue to be tried because there is no evidence to support each element of Nelson's claim that DLJ intentionally interfered or conspired to interfere with Nelson's relationship with Crown or EEC and caused EEC to breach its contract with Nelson.

■ Responding to DLJ's argument that no genuine issue exists, in its opposition Nelson highlights various facts collected from deposition testimony which support Nelson's claim for intentional interference against DLJ. Nelson identified the following facts: 1) DLJ had a significant financial interest in completion of the Exchange Offer; 2) DLJ as Dealer Manager was entitled to receive Soliciting Dealer's commissions where no Soliciting Dealer was named in the Letter of Acceptance; 3) DLJ and other investors purchased various Haught properties for exchange to EEC; 4) DLJ, now part owner of these properties, had the authority to insert T. Bob's name on the Letter of Acceptance as Soliciting Dealer for the Haught properties; 5) Upon becoming Dealer Manager, DLJ took over and began running the Exchange Offer; 6) DLJ began making the decisions for EEC; 7) DLJ attempted to renegotiate all expenses, including locator's fees, because of insufficient funds to close the deal as originally planned; and 8) at the time of the closing, the deal was being run by DLJ. Another significant fact in evidence of this claim is the fact that DLJ representatives continuously reassured Nelson that he would be paid. Viewed in the light most favorable to Nelson, these facts and the inferences to be drawn from them constitute sufficient evidence from which a reasonable jury could return a verdict in favor of Nelson. Nelson has made a sufficient showing to establish each element of his claim for intentional interference with contractual relations against DLJ. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Accordingly, because genuine issues for trial exist, DLJ is not entitled to judgment as a matter of law and its motion for summary judgment on Nelson's intentional interference claim should be denied.

## IV.

### *Unfair or Deceptive Business Practices*

Nelson's claim against DLJ for unfair business practices under Chapter 93A of Massachusetts General Laws is based upon the same facts as those supporting his claim for intentional interference with contractual relations. Mass.Gen.Laws 93A. Upon those same facts and the inferences to be drawn from those facts, a reasonable jury could find for Nelson on his 93A claim.

Thus, there is evidence to support Nelson's 93A claim and summary judgment would be improper.