JOHN M. ROONEY vs. PAUL D. OSBORNE DESK COMPANY,
INC., & others.[1]

No. 93-P-1013.

Norfolk. November 7, 1994. - January 27, 1995.

Present: FINE, GILLERMAN, & IRELAND, JJ.*

*Estoppel. Contract*, Promissory estoppel, Validity, Personal services. *Corporation*, Stock.

In a civil action, adequate evidence of the plaintiff's detrimental reliance
on the defendant's promise to convey certain shares of common stock
supported the jury's verdict on the plaintiff's claim for the fair value of
the stock on a promissory estoppel theory. [83-84]

In the circumstances of a civil action in which the plaintiff established that
he rendered the services contemplated in an agreement with the defend-
ant corporation, in return for which he had been promised 554 shares of
stock that the corporation agreed to issue in violation of G. L. c. 156B,
§ 21, i.e., before the services were actually rendered, the plaintiff was
nonetheless entitled to the value of the shares, where in the circum-
stances no purpose of the statute would be violated, and where no desir-
able purpose would be achieved by allowing the defendant to keep the
benefit of the plaintiff's services without delivering the fair value of
what it promised. [84-87]

In a civil action, the plaintiff's recovery on a count of wrongful termination
was duplicative, in the circumstances, of his recovery on the other
counts based on a theory of promissory estoppel, and the judgment on
the verdicts was to reflect that the plaintiff may recover on either the
one count or the others, but not all. [87]

---

[1]Theodore N. Tesorero, Paul Osborne, Paul Tesorero, and Mary C.
Osborne as executrix of the estate of Harry J. Osborne. The individual
defendants did not file a brief in this appeal. They are, however, cross-
appellees in the plaintiff's attempt to reverse the allowance of the
defendant's motion to enter judgment notwithstanding the verdict on the
count for wrongful termination.

*Justice Fine participated in the deliberation on this case prior to her
retirement.

CIVIL ACTION commenced in the Superior Court Department on January 25, 1990.

The case was tried before *John M. Xifaras*, J., and a motion for a new trial was heard by him.

*Bruce G. McNeill* (*Edward R. Wiest* with him) for the defendants.

*Jeremiah P. Sullivan, Jr.*, for the plaintiff.

GILLERMAN, J. The plaintiff brought an action to obtain the fair value of 554 shares of the defendant's common stock which he said had been promised him for services to be rendered in the future — a promise upon which he claims to have relied. The jury, who answered special questions, found for the plaintiff on a promissory estoppel theory, and they also concluded that his employment had been wrongfully terminated. He was awarded damages both for the value of the stock that had been promised to him and for the wrongful termination.

Over the plaintiff's objection, the defendant's motion for judgment notwithstanding the verdict was granted as to the plaintiff's claim for wrongful termination. The defendant's motion for a new trial as well as its motion for judgment notwithstanding the verdict on the promissory estoppel count were denied. Both parties appealed.

We reach the following conclusions as to the principal issues presented by the appeal.

1. Promissory estoppel — a phrase criticized by the Supreme Judicial Court in *Loranger Constr. Corp.* v. *E. F. Hauserman Co.*, 376 Mass. 757, 761 (1978), as tending to confusion rather than clarity — consists simply of a promise that becomes enforceable because of the promisee's reasonable and detrimental reliance. *Id.* at 760-761. *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 93 (1987). Here, the corporate promise to issue shares of the defendant's capital stock was set out in the written minutes of a meeting of the board of directors held on December 16, 1985[2]; on that date the directors voted unanimously as fol-

---

[2]The minutes were prepared by the plaintiff as corporate clerk; they are consistent with his handwritten notes of the board meeting.

lows: "Jack Rooney to receive shares at 10% for 10 years. Total 554 shares, or full amount upon the death of . . . [both of the two founders of the corporation, Harry Osborne and Theodore Tesorero]."[3] The shares referred to in the vote were common stock, no par value. Nothing more was required as proof of the defendant's promise.

As to the evidence of reliance, the plaintiff testified that the 554 shares were to be paid for by his future services. That is, it was understood that the plaintiff was to receive reduced compensation as he moved from a commissioned salesperson without stock ownership to executive vice president and stockholder. A comprehensive summary of the plaintiff's compensation as a commissioned salesperson and, beginning January 1, 1986, as executive vice president of the defendant corporation was submitted as an exhibit. The jury were entitled to credit such portions of the exhibit as they chose to believe, and a reasonable juror could have concluded from that exhibit that the plaintiff could reasonably have anticipated that the compensation which the plaintiff received as a commissioned salesperson in 1985 was likely to be, and in fact was, higher than the compensation the plaintiff was paid during the years 1986 through 1988. Contrary to the defendant's contention, the jury were not obliged to accept as conclusive the adjustments to compensation which also appear in the exhibit. Thus, there was adequate evidence of detrimental reliance to support the verdict in favor of the plaintiff on his count for promissory estoppel.

2. The defendant's reliance on the plaintiff's "admission" pursuant to Mass.R.Civ.P. 36, 365 Mass. 795 (1974), is entirely misplaced. That admission merely established that the plaintiff did not own any shares of stock on September 8, 1988. As to that fact there is no dispute.

3. The defendant argues that the provisions of G. L. c. 156B, § 21, which we set out in the margin,[4] prohibit the

---

[3]The minutes do not state whether, or the extent to which, the stock to be issued was to be treasury stock or newly issued stock.

[4]General Laws c. 156B, § 21, inserted by St. 1964, c. 723, § 1, provides that "No stock shall be issued unless the . . . services . . . for which

issuance of corporate stock for future services. That is pre-cisely what the board voted to do, the argument runs, and therefore § 21 precludes recovery.

Preliminarily it might be observed that the form of vote passed on December 16, 1985 (quoted above), could yield the interpretation that ten percent of the stock was to be issued annually in consideration of services rendered during the year just ended, thus avoiding any § 21 problem. The diffi-culty here is that the plaintiff testified that he understood the vote to mean that the stock was to be issued at the com-mencement of each year of service, not at the end of each year.[5] Moreover, it was possible that both founders would die before the plaintiff rendered his entire ten years of service, in which event the plaintiff was immediately to receive the en-tire balance of the 554 shares.

These difficulties are not decisive. Assuming the promise is to issue stock for future services, the question is whether the promise to do what the statute prohibits makes that promise, which is otherwise enforceable, void. A similar problem was explored by Justice Kaplan some years ago in *Town Planning & Engr. Assocs., Inc.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 745-747 (1976). In *Town Planning*, the court allowed recovery for engineering services rendered notwithstanding the fact that the plaintiff was engaged in the practice of en-gineering while not "holding [a] certificate[ ] of registration as [a] professional engineer[ ]" as required by law. *Id.* at 743. The court identified a number of relevant considera-tions, and we mention a few that bear particularly on this case: what is the aim of the statute; what was the extent of the illegal behavior; "how serious or deserved would be the

---

it was authorized to be issued . . . has [*sic*] been actually . . . rendered to the corporation . . . ."

General Laws c. 156B, § 60, inserted by St. 1964, c. 723, § 1, provides that if stock is issued which does not comply with the requirements of section 21, "the directors who voted to authorize such issuance and the president and the treasurer of the corporation shall be jointly and severally liable *to any stockholder . . . by reason of such issuance*" (emphasis added).

[5]The defendants all denied that there was any such vote passed.

forfeiture suffered by the plaintiff, how gross or undeserved the defendant's windfall." *Id.* at 745.

At least in the absence of any concern for creditors — and there is no hint of that concern in this record — § 21 is aimed at protecting the interest of existing stockholders by preventing unreasonable dilutions to their holdings. Thus G. L. c. 156B, § 60, see note 4, *supra,* provides that stock issued in violation of § 21 renders certain officers and the directors who voted for the issuance "jointly and severally liable to any stockholder by reason of such issuance."

Here, on December 16, 1985, the directors voted to approve the agreement to issue the stock to the plaintiff; those directors constituted all of the then stockholders except for Margaret Osborne Walsh, sister of Harry J. Osborne, the company's long-time chairman[6]; her 443 shares, however, were redeemed on September 8, 1988, more than one year prior to the commencement of this lawsuit. She took no part in this litigation, and presumably is unaffected by its outcome. From her silence, we may also presume that Margaret Walsh acquiesced in the vote to issue stock to the plaintiff. We see no violation of any interest the statute is aimed at protecting, and the defendant directs us to none.

We are left, therefore, with the simple question whether the plaintiff, having rendered the services contemplated by the agreement, must now be deprived of the value of what he was promised in exchange, or whether the defendant corporation, having received the benefit of those services, shall be entitled to keep that benefit without delivering the fair value of what was promised but never delivered. No desirable purpose would be achieved by a result which precludes recovery by the plaintiff in the circumstances of this case.[7] We adhere to the principles described in *Town Planning* and decline to adopt "the sentimental fallacy of piling on sanctions unthink-

---

[6]In addition, a nominal one share was issued to counsel to the corporation. Presumably he was aware of, but did not object to the vote of December 16, 1985.

[7]*Young* v. *Titcomb,* 268 Mass. 14 (1929), upon which the defendant relies, has no bearing on the facts of this case.

ingly once an illegality is found." *Id.* at 746. See also *Valley Stream Teachers Credit Union* v. *Commissioner of Banks*, 376 Mass. 845, 851-855 (1978).

4. The jury rendered a single verdict for the plaintiff on count II (promissory estoppel), count III (unjust enrichment) and count IV (quantum meruit) in the sum of $235,000. They also rendered a verdict for the plaintiff on count V for wrongful termination in the amount of $208,000. A judgment was entered in accordance with these verdicts. Subsequently the judge allowed the defendant's motion for judgment notwithstanding the verdict on count V, thereby accepting the defendant's argument that the verdict on count V was duplicative of the verdict on counts II-IV.

We agree that the verdict on count V is duplicative of the verdicts on counts II-IV. The special question to the jury regarding count V asked whether the plaintiff's termination was "in order to avoid transferring to John Rooney the stock of the Paul M. Osborne Desk Company, Inc., as promised." The jury answered in the affirmative. Since the plaintiff is to receive the fair value of what the termination was designed to avoid, and he was otherwise an employee at will, the plaintiff is not entitled to be paid twice for one injury. However, the allowance of the defendant's motion for judgment nothwithstanding the verdict on count V was not correct. The judgment that was entered on the verdicts need only have reflected that the plaintiff may recover either on counts II-IV in the amount of $235,000, or on count V in the amount of $208,000, but not both.

Accordingly, the denial of the defendant's motion for a new trial and judgment notwithstanding the verdict is affirmed as to counts II, III, and IV; as to count V, the allowance of the defendant's motion for judgment notwithstanding the verdict is reversed, and judgment is to be entered in favor of the plaintiff in the amount of $235,000.

*So ordered.*