**Gerald J. MASSO, Plaintiff,**

**v.**

**UNITED PARCEL SERVICE OF AMER-ICA, INC., Edward Chip, George Armentano, David Mackey, Al Bethune, Kenneth Brink, Thomas Upton, Mark Vetkevich, John Lacasse, William Murphy and Robert Polito, Defendants.**

**Civ. A. No. 94–10753–RCL.**

United States District Court, D. Massachusetts.

March 31, 1995.

John C. Bryson, JRL., Murphy, McCoubrey, Murphy Gelinas, Stocks & Auth, Chicopee, MA, for plaintiff.

Sharon R. Burger, James N. Boudreau, Nutter, Mc Clennen & Fish, Boston, MA, for defendant.

## Order

REGINALD C. LINDSAY, District Judge.

Report and Recommendation Adopted.

## REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOCKET ENTRY # 4)

### March 14, 1995

BOWLER, United States Magistrate Judge.

Defendant United Parcel Service of America, Inc. ("UPS") and defendants Edward Chip ("Chip"), George Armentano ("Armentano"), David Mackey ("Mackey"), Al Bethune ("Bethune"), Kenneth Brink ("Brink"), Thomas Upton ("Upton"), Mark Vetkevich ("Vetkevich"), John LaCasse ("LaCasse"), William Murphy ("Murphy") and Robert Polito ("Polito") (collectively: "the individual defendants"), all UPS supervisory employees in the New England region, move to dismiss the six counts in the complaint filed by plaintiff Gerald J. Masso ("Masso"), a former UPS employee. (Docket Entry # 4). Masso opposes dismissal. (Docket Entry ## 7 & 12). After conducting a hearing (Docket Entry # 13), this court took the motion to dismiss (Docket Entry # 4) under advisement.

■ The six count complaint alleges that UPS and the individual defendants wrongfully discharged Masso as a result of Masso installing copyrighted software on their home computers at their behest. Inasmuch as UPS and the individual defendants seek dismissal under Rule 12(b)(6), Fed.R.Civ.P., this court shall draw all reasonable inferences in favor of Masso, the nonmoving party, and accept as true the factual allegations contained in the complaint. *Vartanian v. Monsanto Company,* 14 F.3d 697, 700 (1st Cir. 1994). Dismissal is proper if the plaintiff "cannot recover under any viable theory." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 53 (1st Cir.1990) (legal conclusions not entitled to presumption of truthfulness);

*accord Vartanian v. Monsanto Company,* 14 F.3d at 700. As alleged in the complaint, this court finds the following facts for purposes of the motion to dismiss.

## BACKGROUND

Masso, a Rhode Island resident, formerly worked as Field Support Supervisor for the East New England District of UPS. Plaintiff provided computer training to UPS employees and also installed and repaired computers at UPS in the East New England District. As such, plaintiff served the computer needs of the individual defendants, all of whom had higher positions at UPS than Masso.

In early 1992, Mackey, Controller for the East New England District of UPS, asked Masso to install a computer in Mackey's home. Shortly thereafter, Mackey told Masso that Armentano, Field Support Manager for the East New England District of UPS, would supply Masso with the necessary software. A few days later, Armentano provided Masso with copies of Lotus 1–2–3, Q & A and other disks, all of which constituted software licensed to UPS.

In accordance with Mackey's instructions, Masso installed the software on Mackey's home computer. Masso thereby exposed himself to potential civil liability by the software owners for copyright infringement. *See* 17 U.S.C. § 109(b)(1)(A); *see also Concrete Machinery Co. v. Classic Lawn Ornaments,* 843 F.2d 600, 605 (1st Cir.1988) (stating elements for copyright infringement).

Thereafter, Bethune, Division Manager of UPS' Norwood, Massachusetts office, Brink, Center Manager for Customer Service of UPS' Watertown, Massachusetts office, and six other UPS executives asked Masso to negotiate and acquire personal computers from a computer vendor using money provided to Masso by these individuals. Bethune, Brink and the six other UPS executives also asked Masso to install the Lotus 1–2–3 and Q & A copyrighted software on the newly purchased computers in their homes.

In addition to Mackey, Bethune and Brink, Chip, Armentano, Upton, Vatkevich, LaCasse, Polito and Murphy requested that

Masso install Lotus 1–2–3 and Q & A on their home computers despite their knowledge that Masso's conduct would violate the software makers' copyrights. Five of these individuals compensated Masso after Masso originally refused such compensation. One individual mailed Masso $50, one individual left a check for $50 underneath Masso's office door, one individual handed Masso $50 while Masso was installing the software, one individual put $20 or $40 in Masso's hand and, finally, another individual placed a case of beer in Masso's automobile.

Armentano, Ronald St. Laurent, an auditor at UPS, and James Fallon, Center Manager at UPS' Norwood, Massachusetts office, told other UPS employees outside the circle of UPS executives who legitimately needed such information, that Masso had received thousands of dollars for his efforts. Armentano also spread the information that Masso had received "kickbacks" from the computer vendor or manufacturer. Such statements were false.

On February 10, 1993, UPS terminated Masso's employment because he installed the copyrighted software on the home computers of the UPS executives thereby committing an integrity violation.

## DISCUSSION

The complaint alleges the following counts: (1) violation of the covenant of good faith and fair dealing against UPS (Count I); (2) negligent misrepresentation against UPS and the individual defendants (Count II); (3) promissory estoppel against UPS (Count III); (4) intentional interference with business relations against Chip, Mackey and Armentano (Count IV); (5) defamation against UPS (Count V); and (6) wrongful discharge against UPS (Count VI). This court addresses the counts *seriatim.*

I. *Covenant of Good Faith and Fair Dealing*

■ The general rule in Massachusetts is that in circumstances involving an employment at will the employer may terminate the employee without reason subject to certain limited exceptions where a covenant of good faith and fair dealing may be implied. *Wright v. Shriners Hospital for Crippled Children,* 412 Mass. 469, 589 N.E.2d 1241, 1244 (1992); *St. Arnaud v. Chapdelaine Truck Center, Inc.,* 836 F.Supp. 41, 43 (D.Mass.1993). Such exceptions include when an employer terminates an employee to circumvent payment of future expected compensation for past services or expected benefits. *Fortune v. National Cash Register Company,* 373 Mass. 96, 364 N.E.2d 1251, 1257 (1977); *Gram v. Liberty Mutual Insurance Co.,* 384 Mass. 659, 429 N.E.2d 21, 29 (1981). Another recognized exception is where the employer terminates an at will employee for violating public policy.

■ The public policy exception, however, does not extend to protect socially desirable duties. *Smith–Pfeffer v. Fernald State School,* 404 Mass. 145, 533 N.E.2d 1368, 1371 (1989) (discharge due to criticisms of state school of mental retardation did not fall within exception). Instead, the exception protects employees for asserting legally guaranteed rights, for doing what the law requires or for *refusing* to do what the law forbids. *Wright v. Shriners Hospital for Crippled Children,* 589 N.E.2d at 1244. The Massachusetts Supreme Judicial Court ("SJC"), however, cautions against creating a new definition of at will employment by extending the exceptions to create "a rule that requires just cause to terminate an employee-at-will." *Smith–Pfeffer v. Fernald State School,* 533 N.E.2d at 1371; *accord King v. Driscoll,* 418 Mass. 576, 638 N.E.2d 488, 492 (1994) (quoting *Smith–Pfeffer* ).

■ Masso acknowledges that he "is not alleging that his discharge violated public policy." (Docket Entry # 7). UPS terminated Masso because his conduct contravened copyright laws, not because Masso was refusing to do what the law forbids. Nor do the facts support a claim for termination to avoid payment of past services or benefits earned but not received.[1] Rather, Masso

---

1. Masso's citation to *Devlin v. WSI Corporation,* 833 F.Supp. 69, 77 (D.Mass.1993), therefore, is unavailing. Devlin involved the *Fortune* category of exception to the at will employment doctrine, i.e., Devlin's termination "to deprive him

urges this court to extend Massachusetts law to encompass situations beyond a violation of public policy or the discharge of an employee to avoid payment of earned compensation. This court declines to further limit the at will employment doctrine particularly in light of the aforementioned cautionary language in *Smith–Pfeffer* and, more recently, in *King.*

## II. *Negligent Misrepresentation*

■ The tort of negligent misrepresentation provides compensation for pecuniary losses incurred as a result of reasonable negligence on a negligent misrepresentation. *Robertson v. Gaston Snow & Ely Bartlett,* 404 Mass. 515, 536 N.E.2d 344, 349, *cert. denied,* 493 U.S. 894, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989) (to recover for negligent misrepresentation, the plaintiff must show that the defendant falsely represented that the plaintiff would be employed and that the plaintiff reasonably relied on the representation); *see Danca v. Taunton Sav. Bank,* 385 Mass. 1, 429 N.E.2d 1129, 1133–1134 (1982); *Lawton v. Dracousis,* 14 Mass.App.Ct. 164, 437 N.E.2d 543, 547, *review denied,* 387 Mass. 1103, 440 N.E.2d 1177 (1982) (negligently supplying false information may create liability if there is justifiably reliance); *see also Craig v. Everett M. Brooks Co.,* 351 Mass. 497, 222 N.E.2d 752, 754–755 (1967). The above definition generally follows *The Restatement (Second) of Torts § 552 (1977)* which provides that:

> One who, in the course of his business … or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See DeMarco v. Granite Savings Bank,* 1993 WL 220551 at *2 (Mass.App.Ct. June 11, 1993) (adopting *Restatement* definition of negligent misrepresentation); *Lawton v. Dracousis,* 437 N.E.2d at 547 (noting *Restatement* definition of negligent misrepresentation with approval).

of benefits earned but not received." *Devlin v.*

■ As alleged in the complaint, which this court accepts as true, various individual defendants requested Masso to perform an illegal act, placing copyrighted software on certain of the individual defendants' home computers. By requesting Masso to perform an illegal act, these individuals made an implied representation that Masso would not be terminated by UPS. (Docket Entry # 1, ¶ 29).

■ UPS and the individual defendants (collectively: "defendants") raise a number of arguments in favor of dismissing Count II which alleges liability for negligent misrepresentation. First, defendants argue that Masso fails to plead this count with particularity as required under Rule 9(b), Fed.R.Civ.P. (Docket Entry # 6, pp. 6–7). The short answer to this argument is that Rule 9(b) does not apply to a count alleging a negligent misrepresentation. *City of Worcester v. HCA Management Company, Inc.,* 1994 WL 123629 at *1 (D.Mass. April 7, 1994) (denying motion to dismiss because negligent misrepresentation count "is not subject to the particularity requirement of Fed.R.Civ.P. 9(b)").

Next, defendants contend that any representation made by a defendant that UPS would not terminate Masso for unlawfully copying software was made outside the scope of that defendant's employment. While this argument presumably pertains only to UPS (Docket Entry # 6, p. 7, Docket Entry # 10, p. 4 & n. 4), it is unavailing in the context of the review afforded to a motion to dismiss. The complaint states that certain defendants informed Masso that having the copyrighted software on their home computers would enhance their computer literacy thereby increasing their management efficiency at UPS. Masso's activity therefore arguably involves a connection with his employment. In cases concerning assaults which, similar to copying, can lead to civil liability courts examine the relationship between the plaintiff's activities and the employee's ability to perform his job. *See Miller v. Federated Department Stores, Inc.,* 364 Mass. 340, 304 N.E.2d 573, 578–579 (1973); *see also Lennon v. Walsh,* 798 F.Supp. 845, 848 (D.Mass.1992)

*WSI Corporation,* 833 F.Supp. at 78.

(citing *Miller* and discussing liability of employer for employee's conduct). Consequently, viewing the record in Masso's favor, there is a set of facts which, if true, would refute defendants' argument.

■ Defendants further urge that Masso's reliance on the implied representation was objectively unreasonable. Defendants are correct insofar as Masso's reliance must be reasonable to state a claim for negligent misrepresentation. *See Trifiro v. New York Life Insurance Company,* 845 F.2d 30, 33 (1st Cir.1988) (negligent misrepresentation, as well as other torts, requires reasonable reliance by the plaintiff). The complaint states that Masso relied to his detriment on the representation that UPS would not terminate him for installing the copyrighted software on the home computers. (Docket Entry # 1, ¶ 31). Whether Masso's reliance was reasonable, however, presents a difficult question. Installing copyrighted software is unlawful. Masso's reliance on an individual's representation that UPS would condone such unlawful conduct is problematic. On the other hand, these individuals were Masso's superiors although the complaint is unclear as to whether these individuals had the authority to hire or to fire Masso. Chip, Mackey and Armentano were Masso's direct supervisors. (Docket Entry # 1, ¶ 13). Ordinarily, adhering to the instructions of an employee's immediate supervisor is reasonable. Making a reasonable inference from the complaint, no UPS executive advised or implied to Masso that his job was at risk. *Cf. Robertson v. Gaston Snow & Ely Bartlett,* 536 N.E.2d at 349 (the plaintiff was told that his job was at risk and wrote a letter voicing his concern thereby evidencing lack of reasonable reliance). In fact, a number of defendants compensated or showed their appreciation to Masso for his actions. Viewing the complaint in a favorable light, defendants therefore fail to establish that Masso's reliance was unreasonable for purposes of Rule 12(b)(6), Fed.R.Civ.P.

Defendants also raise another persuasive, albeit unsuccessful, argument regarding the elusive quality of the implied representation at issue. Not only is the representation implied but it concerns the future and Masso's continued employment at UPS.

■ Mere silence or nondisclosure generally does not create an actionable misrepresentation. Silence, however, "may be actionable where the relationship of the parties creates a particular legal or equitable obligation to communicate all the facts." *DeMarco v. Granite Savings Bank,* 1993 WL 220551 at *2 (Mass.App.Ct. June 11, 1993). It is the conduct and the words which determine whether defendants' actions amounted to a negligent misrepresentation that UPS would not terminate Masso because he installed copyrighted software on the home computers of UPS executives. *See Danca v. Taunton Savings Bank,* 429 N.E.2d at 1133; *see also Page v. Frazier,* 388 Mass. 55, 445 N.E.2d 148, 155 (1983).

In this instance, Masso's direct supervisors, Chip, Mackey and Armentano, instructed or encouraged Masso to install copyrighted software on the home computers of UPS executives. In addition, all of the individual defendants had the authority to require Masso to serve their computer needs. (Docket Entry # 1, ¶ 13). Their conduct implicitly approved of Masso's actions although they knew that Masso's conduct was illegal. (Docket Entry # 1, ¶ 31). They advised Masso that installing the copyrighted software would improve their computer literacy at work. While the question remains open as to which defendants, if any, had the authority to hire or to fire Masso, his direct supervisors, arguably, made an implied statement that UPS would not terminate Masso of installing the copyrighted software.

■ It is also true that false representations about the future are not actionable. *Frederick v. ConAgra, Inc.,* 713 F.Supp. 41, 46 (D.Mass.1989). Massachusetts law, however, recognizes an exception "'where the parties to the transaction are not on an equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the representations relate.'" *Cellucci v. Sun Oil Company,* 2 Mass.App.Ct. 722, 320 N.E.2d 919, 924 (1974), *affm'd,* 368 Mass. 811, 331 N.E.2d 813 (1975); *see also Della Croce v. General Electric Company,* 1988 WL 6582

(D.Mass. Jan. 7, 1988) (citing *Cellucci*). Similar to *Cellucci*, this case involves a business transaction with the knowledge regarding Masso's continued employment at UPS presumably within the control of Masso's direct superiors. Hence, again viewing the record in Masso's favor, dismissal under Rule 12(b)(6) is improper.

Defendants also submit that negligent misrepresentation only applies when the defendant makes a misrepresentation to the plaintiff relied on in a business transaction with an individual other than the defendant. Defendants rely on the law of Colorado and Illinois to establish this principle. (Docket Entry # 6, pp. 8–9). Absent authority based on the law of negligent misrepresentation in Massachusetts forthcoming from defendants within 15 days of the date of this opinion, this argument is unavailing.

Finally, defendants argue that Masso was an at will employee and, consequently, cannot establish damages as a result of the misrepresentation. (Docket Entry # 6, pp. 9–10). In the context of a claim for breach of the implied covenant of good faith and fair dealing, an employee at will can recover future wages for past services but not future wages for future services. *See Gram v. Liberty Mutual Insurance Co.*, 429 N.E.2d at 29. Defendants therefore reason that Masso cannot recover lost future income for future services and therefore suffered no out of pocket losses as a result of the misrepresentation.

Damages for the tort of negligent misrepresentation are set forth in section 552B of *The Restatement (Second) Torts* (1977). *Danca v. Taunton Savings Bank*, 429 N.E.2d at 1134. Section 552B provides that:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him which the misrepresentation is a legal cause, including …
>
> (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*The Restatement (Second) Torts* § 552B (1977). This rule generally "restates the traditional 'out of pocket' measure of damages which is more consistent with the restitutional nature of tort remedies."[2] *Anzalone v. Strand*, 14 Mass.App.Ct. 45, 436 N.E.2d 960, 962 (1982).

Masso fails to specify the nature of his damages. The complaint simply requests "money damages, interest, costs, and such further relief as the court deems just and appropriate." (Docket Entry # 1). Masso also makes a brief reply to defendants' argument by stating that the court in *DeRose v. Putnam Management Company, Inc.*, 398 Mass. 205, 496 N.E.2d 428, 432 & n. 6 (1986), rejected the exact same argument. *DeRose*, however, involved a measure of damages sought for wrongful termination of an employee at will which was contrary to public policy. *DeRose v. Putnam Management Company, Inc.*, 496 N.E.2d at 429 & 431–432 (jury awarded the plaintiff $9,000, an award which suggested that the plaintiff should have accepted a position offered to him two months after his discharge). While the footnote cited is instructive, the case did not involve the measure of damages applicable to the tort of negligent misrepresentation.

As indicated *supra*, damages for the tort of negligent misrepresentation include any pecuniary loss resulting from Masso's reliance on the implied representation that UPS would not terminate him for installing the copyrighted software on the home computers of the UPS executives. Masso's damages also include any pecuniary loss for which the

---

**2.** Defendants rely, in part, on *Treadwell v. John Hancock Mutual Life Insurance Company*, 666 F.Supp. 278 (D.Mass.1987). *Treadwell* involved a claim for deceit by an employee at will and a measure of damages based on "the 'benefit of the bargain' theory of recovery." *Treadwell v. John Hancock Mutual Life Insurance Company*, 666 F.Supp. at 286. Hence, the case is not disposi-

tive of the issue before this court inasmuch as it concerns a different measure of damages. The court in *Treadwell* nevertheless recognized that "damages generally may not be awarded for lost wages if the employment is terminable at will." *Treadwell v. John Hancock Mutual Life Insurance Company*, 666 F.Supp. at 286.

misrepresentation is a legal cause. At a minimum, therefore, Masso is entitled to any loss of money or loss of something which money could acquire [3] suffered as a consequence of reliance on the representation. Inasmuch as such damages conceivably could include "money damages" sought in the complaint other than lost future income, this court need not decide the issue of whether Masso can recover such future income.[4] In light of the standard applicable to a motion to dismiss under Rule 12(b)(6), therefore, dismissal is inappropriate.

### III. *Promissory Estoppel*

■ Massachusetts cases recognize the theory of promissory estoppel although the SJC eschews use of the doctrine by name. *Loranger Construction Corporation v. E.F. Hauserman Company*, 376 Mass. 757, 384 N.E.2d 176, 179 (1978) (collecting cases); *Rooney v. Paul D. Osborne Desk Co.*, 38 Mass.App.Ct. 82, 645 N.E.2d 50, 51 (1995) (noting that SJC avoids using the phrase "promissory estoppel"); *see Nelson v. Energy Exchange Corporation*, 727 F.Supp. 59, 62–63 (D.Mass.1989) (citing *Loranger* and denying summary judgment on promissory estoppel theory). Masso labels Count III as seeking recovery under the theory of "promissory estoppel." Masso's brief, however,

cites to authority regarding the theory of equitable estoppel.

■ Promissory estoppel permits recovery due to reliance on a promise of future intent. In contrast, equitable estoppel permits recovery due to reliance on a past or present misrepresentation. *See Boylston Development Group, Inc. v. 22 Boylston Street Corporation*, 412 Mass. 531, 591 N.E.2d 157, 163 & n. 17 (1992).[5] Inasmuch as Masso bases his claim on the implied promise that UPS would not terminate him in the future if he installed the copyrighted software on the home computers of UPS executives, Masso's claim falls under the theory of promissory estoppel.[6]

Turning to the theory of promissory estoppel, the SJC generally follows *The Restatement (Second) of Contracts* § 90 (1981) which requires that the promisee "'actually rely on the promise' and 'the reliance must have been induced by the promise.'" *Cambridgeport Savings Bank v. Boersner*, 413 Mass. 432, 597 N.E.2d 1017, 1023 & n. 13 (1992); *Loranger Construction Corporation v. E.F. Hauserman Company*, 384 N.E.2d at 179; *Chedd–Angier Production v. Omni Publications International*, 756 F.2d 930, 936–937 (1st Cir.1985) (noting that *Loranger* adopted section 90 of *The Restatement (Sec-*

---

**3.** *Black's Law Dictionary* (1979) defines "pecuniary loss" as, "A loss of money, or of something by which money or something of money value may be acquired."

**4.** If Masso expects to survive summary judgment, however, he is advised to set forth his damages in a more specific manner and address defendants' argument with authority to support the recovery of any such claimed damages. Moreover, the SJC generally adopts a narrow view to expanding the limited rights of redress given to employees at will against their employer. *See King v. Driscoll*, 418 Mass. 576, 638 N.E.2d 488, 492 (1994) (narrowly interpreting public policy exception to avoid imposing a requirement of just cause to terminate an at will employee). Furthermore, recovery of lost future wages for future services runs contrary to the nature of an at will employment. The fact that Masso may not be entitled to lost future income due to the misrepresentation simply suggests that he had no right to expect continued employment at UPS at the time of the misrepresentation or thereafter. Thus, if awarded lost future income Masso would be placed in a better position than he would have

been in without the misrepresentation. Finally, absent credible evidence of damages, a dismissal on the basis that the plaintiff has shown no right to relief on the facts or on the law is proper, a standard somewhat similar to summary judgment dismissal. *McGlashing v. Fabas, Inc.*, 1994 WL 661149 at *1 (Mass.App.Ct. Nov. 16, 1994) (affirming dismissal under Mass.R.Civ.P. 41(b)(2) of misrepresentation claim due to absence of credible evidence of damages).

**5.** Equitable estoppel requires: (1) a representation or conduct intended to induce a course of action by the person to whom the representation is made; (2) "an act or omission resulting from the representation ... by the person to whom the representation is made; (3) and detriment to such person as a consequence of the act or omission." *Boylston Development Group, Inc. v. 22 Boylston Street Corporation*, 591 N.E.2d at 163.

**6.** To the extent Masso seeks recovery under a theory of equitable estoppel, he may seek leave to amend the complaint although the theory of recovery is less favorable to his position.

*ond) of Contracts* in its tentative form). *The Restatement (Second) of Contracts* (1981) defines promissory estoppel as:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*The Restatement (Second) of Contracts* § 90 (1981); *Cambridgeport Savings Bank v. Boersner,* 597 N.E.2d at 1023 & n. 13 (quoting section 90(1)).

For reasons set forth in part II, Masso survives Rule 12(b)(6) dismissal to the extent that he reasonably relied on an implied promise that UPS would not terminate him for installing copyrighted software on the home computers of UPS executives. Masso was adhering to the instructions of his direct supervisors and other higher level UPS executives. Arguably, it is reasonable to rely on instructions from immediate supervisors to follow a course of conduct and the implied promise therein that UPS would not terminate Masso for engaging in such conduct notwithstanding the civil liability imposed for such conduct.

Turning to defendants' public policy arguments, when a promise is enforceable due to reliance, the promise becomes a contract enforceable pursuant to "'traditional contract theory,'" *Loranger Construction Corporation v. E.F. Hauserman Company,* 384 N.E.2d at 179, "except as to recovery." *McAndrew v. School Committee of Cambridge,* 20 Mass.App.Ct. 356, 480 N.E.2d 327, 332 & n. 11 (1985) (citing *Loranger*). Thus, while the plaintiff may be entitled to a range of damages from "full contract damages to

reliance or restitution damages," *Chedd–Angier Production v. Omni Publications International,* 756 F.2d at 937, the recovery appropriately may be "limited as justice requires." *Cambridgeport Savings Bank v. Boersner,* 597 N.E.2d at 1023 & n. 13 (quoting section 90(1)). In this manner, the policy issues of engaging in conduct in violation of a civil statute[7] and the prohibition against recovery of future income for an at will employee alleging wrongful discharge may be implicated. Such arguments, however, address the remedy rather than whether Count III states a claim for relief under Rule 12(b)(6), Fed.R.Civ.P.

▮ Finally, defendants rely, in part, on *Treadwell v. John Hancock Mutual Life Insurance Company,* 666 F.Supp. at 286–287. In dismissing a claim for promissory estoppel brought by an employee at will against his former employer under Massachusetts law, the court in *Treadwell* denied the claim to the extent it sought recovery for future wages and benefits related to future services. The elements of a claim for promissory estoppel, however, do not include proof of damages. *See Cambridgeport Savings Bank v. Boersner,* 597 N.E.2d at 1023 & n. 13 (theory requires that promisee rely on promise and that such reliance was induced by the promise); *Loranger Construction Corporation v. E.F. Hauserman Company,* 384 N.E.2d at 179 (simply stating that "[w]hen a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to 'traditional contract theory'").[8] Examining the complaint and taking the factual assertions therein as true, dismissal of Masso's promissory estoppel claim is improper.

---

**7.** As defendants point out, *The Restatement (Second) of Contracts* § 192 (1981) provides that, "A promise to commit a tort is plainly unenforceable on grounds of public policy."

**8.** Defendants may, of course, seek summary judgment, in whole or in part, to the extent that Masso cannot recover damages for future services as an at will employee under his promissory estoppel claim.

In addition, defendants' arguments based on agency are best addressed on summary judgment

with a factual record. The complaint does not need to allege that Mackey or some other UPS executive had the authority to bind UPS. Both *Rydman v. Dennison Manufacturing Company,* 373 Mass. 855, 366 N.E.2d 763 (1977), and *Gregory v. Raytheon Service Company,* 27 Mass.App. Ct. 1170, 540 N.E.2d 694, *review denied,* 405 Mass. 1205, 545 N.E.2d 43 (1989), relied on by defendants, concern, respectively, a motion for a directed verdict and a motion for summary judgment.

IV. *Intentional Interference with Business Relations*

Count IV raises a claim against Mackey, Chip and Armentano for their intentional interference with Masso's business relations with UPS. Defendants argue that the complaint fails to allege a cause of action because it fails to state that Mackey, Chip and/or Armentano acted intentionally and with malice or were motivated by malice, malevolence or spite. (Docket Entry # 6). Masso counters that malice is no longer an element of the tort. Rather, Masso claims he need only establish that Mackey, Chip and Armentano acted improperly, in other words, that the interference was improper in motive or means. (Docket Entry ## 7 & 12).

After the decision in *United Truck Leasing Corporation v. Geltman,* 406 Mass. 811, 551 N.E.2d 20 (1990),[9] the SJC addressed the elements of this tort in *Boothby v. Texon, Inc.,* 414 Mass. 468, 608 N.E.2d 1028 (1993),[10] *Draghetti v. Chmielewski,* 416 Mass. 808, 626 N.E.2d 862 (1994), and *King v. Driscoll,* 418 Mass. 576, 638 N.E.2d 488 (1994). In *King,* the more recent decision in the employment context, the SJC stated that:

> One of the elements of intentional interference with contractual relations is improper motive or means on the part of the defendant. [Citation omitted]. We have said that the improper motive or malevolence required is "actual malice," [citing *Boothby* ], "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." [Citations omitted]. The motivation of personal gain, including financial gain, however, generally is not enough to satisfy

the improper interference requirement. [Citing *United* ].
*King v. Driscoll,* 638 N.E.2d at 494–495.

Citing *United* in a decision prior to *Boothby* and *King,* the First Circuit summarized the elements of a claim of interference with advantageous relationships as requiring: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." *American Private Line Services v. Eastern Microwave,* 980 F.2d 33, 36 (1st Cir.1992). The First Circuit also recognized that the *United* decision "changed the language from malicious interference to improper interference." *American Private Line Services v. Eastern Microwave,* 980 F.2d at 36 & n. 2.

The *King* decision nevertheless admits that the *Boothby* opinion used the term "actual malice" in referring to the third element of the tort. The SJC in *King,* however, combined the term "actual malice" with the language of having a "spiteful, malignant purpose, unrelated to the legitimate corporate interest." *King v. Driscoll,* 638 N.E.2d at 495. The SJC also reaffirmed that one of the elements is improper means or motive and additionally reaffirmed the principle in *United* that acting for personal, financial gain is insufficient to satisfy the improper interference requirement. Nor will personal dislike for the plaintiff satisfy the element of improper interference. *King v. Driscoll,* 638 N.E.2d at 495.

In *Draghetti,* the SJC found it was error, albeit not a prejudicial error, to include malice in the judge's instructions and in the verdict form[11] with regard to the tort of

---

**9.** In *United,* the SJC abandoned the word "malicious" in describing the elements of the torts of interference with advantageous relationships and intentional interference with a contract but affirmed that something more than intentional was required. The SJC also found it unnecessary to distinguish between the two torts of interference with advantageous relationships and intentional interference with a contract in light of the conduct at issue. *United Truck Leasing Corporation v. Geltman,* 551 N.E.2d at 23 & n. 6.

**10.** Contrary to defendants' argument, in *Boothby,* the SJC did not wholeheartedly endorse the

term "actual malice." Instead, the court determined that the trial judge did not commit an error when ruling that Boothby's evidence was insufficient to prove "actual malice." The SJC further noted that, "Boothby was required to prove that Clarkson's actions were unrelated to any legitimate corporate purpose." *Boothby v. Texon, Inc.,* 608 N.E.2d at 1040.

**11.** The special verdict question asked the jury, "Did said defendant intentionally and maliciously interfere with any advantageous relationship said plaintiff had with the Center?" *Draghetti v. Chmielewski,* 626 N.E.2d at 869 & n. 13.

interference with advantageous relationships. *Draghetti v. Chmielewski,* 626 N.E.2d at 869–870 & n. 13 & 14. The SJC in *Draghetti* reiterated that, "Malice is no longer an element" of the tort of unlawful interference with advantageous relationships. *Draghetti v. Chmielewski,* 626 N.E.2d at 870 & n. 14.

▆ In light of *King, Draghetti, Boothby* and *American,* the third element of the tort requires a showing that the defendant's interference was improper in motive or means. Other language which describes an improper motive or means is when the defendant acts with " 'a spiteful, malignant purpose, unrelated to the legitimate corporate interest.' " *King v. Driscoll,* 638 N.E.2d at 495 (quoting *Wright v. Shriners Hospital for Crippled Children,* 589 N.E.2d at 1246). Furthermore, a defendant's personal dislike for Masso or the motivation to save money and gain financially from Masso's installation of the copyrighted software on a home computer does not satisfy the improper interference element which constitutes an element of Masso's *prima facie* case.

▆ Examining the complaint as to Mackey, Chip and Armentano with respect to the improper interference element, Masso alleges that Armentano misrepresented to other UPS employees that Masso had received "thousands of dollars" and "kickbacks from the computer vendor or manufacturer." According to the complaint, such statements were false and these UPS employees had no "legitimate need for [the] information." (Docket Entry # 1, ¶ 22). Similar to the plaintiff's allegations in *Draghetti,* such misrepresentations adequately set forth improper interference under a Rule 12(b)(6) standard as to Armentano.

▆ Turning to Chip and Mackey, however, Masso forthrightly admits that the issue is a "closer call." (Docket Entry # 7). As noted in the complaint, Chip and Mackey were Masso's direct supervisors and knew or should have known that ordering Masso to commit an illegal act would result in his termination. (Docket Entry # 1, ¶¶ 14 & 33). In addition, Chip and Mackey were aware that Masso was fulfilling requests by UPS executives to install the copyrighted software on these executives' home computers and that such installation would violate the copyrights of the software makers. (Docket Entry # 1, ¶¶ 18–20). Masso also points out that Chip and Mackey refused to exercise their power to prevent Masso's termination. (Docket Entry # 7).

Such allegations, however, fall short of setting forth an improper means or motive. Personal financial gain by saving money through avoiding a retail purchase of the copyrighted software is insufficient. The fact that neither Chip nor Mackey intervened in Masso's termination or did not like Masso is also inadequate. Chip and Mackey's status as Masso's direct supervisors does not infer that their interference was improper. Furthermore, Masso must allege more than Chip's and Mackey's intentional conduct in interfering with Masso's advantageous relationship with UPS. The complaint therefore fails to state a claim of interference with advantageous relationship vis-a-vis Chip and Mackey and, consequently, must be dismissed as to these defendants.

## V. *Defamation*

▆ In Count V, Masso brings a claim against UPS for defamation based on the statements of Armentano and two other UPS executives that Masso received thousands of dollars or kickbacks from the computer vendor or manufacturer for installing the copyrighted software. Masso maintains that the statements were false and were published "far beyond the small circle of executives who had a legitimate need for information concerning [Masso's] activities." (Docket Entry # 1, ¶ 22). Defendants seek to dismiss this count due to UPS' privilege to publish defamatory material about an employee as long as UPS did not publish the material recklessly or maliciously. (Docket Entry ## 6 & 10).

▆ Under Massachusetts law, "An employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." *McCone v. New England Telephone and Telegraph Compa-*

622

*ny*, 393 Mass. 231, 471 N.E.2d 47, 51 (1984) (affirming dismissal under Rule 12(b)(6), Mass.R.Civ.P.); *accord Dexter's Hearthside Restaurant v. Whitehall Company*, 24 Mass. App.Ct. 217, 508 N.E.2d 113, 117, *review denied*, 400 Mass. 1104, 511 N.E.2d 620 (1987). An employer loses the conditional privilege, however, where the employer acts recklessly. *Bratt v. International Business Machines Corporation*, 392 Mass. 508, 467 N.E.2d 126, 132 (1984). The privilege generally encompasses publication to a narrow group of individuals who share a common interest in the communication. *Draghetti v. Chmielewski*, 626 N.E.2d at 867. Consequently, publication to a wide range of individuals will obviate the privilege where the employer acts recklessly. *McCone v. New England Telephone and Telegraph Company*, 471 N.E.2d at 51 (citing *Bratt* ).

Taking the factual allegations in the complaint as true, Armentano and other UPS executives published the false information regarding Masso's receipt of kickbacks to individuals "far beyond the small circle of executives" with a legitimate need for the information. Masso therefore goes beyond merely alleging that the UPS executives communicated the information to a department head or to Masso's immediate supervisors, as was the case in *McCone*. The alleged widespread communication of such false information concerning the improper receipt of thousands of dollars in "kickback" funds sufficiently sets forth a claim of defamation notwithstanding UPS' conditional privilege.

VI. *Wrongful Discharge*

█ Count VI, similar to Count I, seeks to impose liability on UPS for its wrongful termination of Masso. Masso, however, is an at will employee. As such, UPS can terminate Masso for any reason or for no reason at all absent the limited exceptions set forth in part I *supra*. Masso alleges no applicable

exception to the employment at will doctrine. Masso also acknowledges, and this court agrees, that Count VI "adds little to the previous five counts," (Docket Entry # 7) and, in particular, to Count I. Having reviewed the cases cited by Masso, this court remains unconvinced that Masso has a cause of action for UPS' wrongful termination of an at will employee because the employee was doing what the law forbids, i.e., installing copyrighted software on the home computers of UPS executives. Count VI, therefore, fails to state a claim.

## CONCLUSION

This court therefore **RECOMMENDS** [12] that defendants' motion to dismiss (Docket Entry # 4) be **ALLOWED** as to counts I and VI. This court also **RECOMMENDS** [13] that the motion be **ALLOWED** to the extent that Count IV is dismissed as to Chip and Mackey. This court further **RECOMMENDS** [14] that the defendants' motion to dismiss (Docket Entry # 4) as to the remaining counts be **DENIED**.

---

**12.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order.

*United States v. Escoboza Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).

**13.** See the previous footnote.

**14.** See footnote number 12.